(117 So. 765)

No. 29245.

**KANSAS CITY, S. & G. RY. CO. v. MEYER et al.**

**In re KANSAS CITY, S. & G. RY. CO.**

June 4, 1928.

Wilkinson, Lewis & Wilkinson, of Shreveport, for relator.

Thatcher, Browne, Porteous & Myers, of Shreveport, for respondents.

THOMPSON, J. This is a proceeding to expropriate a small strip of land, said to be $28/100$ of an acre, the dimension and shape of which is shown by a blueprint attached to the petition.

The purpose for which the land is desired is to construct a switch or spur track out of the main line of plaintiff company and leading to the Shreveport Creosoting Company.

The petition prayed for a jury to be drawn according to law, and that on a hearing the said land be adjudicated to petitioner, on paying the owners the value thereof.

A jury was ordered for a day fixed.

The defendants appeared and filed a number of motions and exceptions, only two of which are necessary to be referred to in this discussion.

One of these is a motion to rescind the order for a jury, on the ground that the petition did not set up (1) a right to invoke expropriation proceedings, in that it did not allege a public necessity for the taking of the property, or any public use thereof; and (2) that the petition did not show any necessity for the taking of the *particular* property in question.

The other was an exception which alleged various reasons why the plaintiff had no right or interest to expropriate any part of defendants' property, among which were that the creosoting company was already served with a switch or spur track connection with plaintiff's railway; that there were a number of other routes that could be used without encroaching upon or taking any part of defendants' property; and further that the proposed switch or spur track was intended to serve the creosoting company exclusively, and would not be used for the service or benefit of the public.

The plaintiff moved the court to refer all of the exceptions to the merits, to be tried along with all other issues before the jury of freeholders.

This motion was denied; the court recalled its order for a jury, and directed that the exceptions be set down for trial before the court on the date originally set for the trial of the case before the jury.

Thereupon the plaintiff applied to this court for a mandamus to compel the judge to fix the cause for trial, to summon a jury of freeholders as required by law to hear and determine the issues raised in said proceeding, and that the said judge either submit to the jury all of the issues in said case, including the right to expropriate said property, or that, at the time of the trial thereof, he determine said question as a matter of law from the testimony offered, and that said judge be prohibited from dividing said case and trying it by piecemeal.

From the foregoing statement, it is perfectly obvious that the issue tendered by the motion and exceptions is that there is no necessity at all for the taking of defendants' property; the reason being that the proposed switch or spur track is not wanted or required for public use, either actually or theoretically, but that, on the contrary, the real purpose is to benefit the Shreveport Creosoting Company.

And, furthermore, that the plaintiff already has ample facilities of its own to render any public service intended to be rendered by the proposed switch track.

The question, therefore, to be decided on this application, is whether the judge may determine this issue, or whether the same is to be submitted for determination to the jury of freeholders.

It is contended on the part of the plaintiff (1) that the question of the necessity of constructing switch or spur tracks is not a judicial question, but is one that is within the exclusive discretion of the railroad company; and (2) that, if the expediency or necessity of expropriation is triable at all, it should be tried by the jury of freeholders.

The first contention is based on the theory that, since by special legislation (Act 74 of 1902) a railroad company is authorized to expropriate private property for switch and spur tracks, and by Act 267 of 1910 to construct and operate industrial switch or spur tracks, and since such spur or switch tracks are under the supervision and control of the public service commission as subsidiary to the main track, the expediency or necessity for the exercise of eminent domain is to be determined by the railroad company, upon which the authority to expropriate has been conferred by the Legislature.

Counsel cite in support of their contention 10 R. C. L. 183 and 184, 20 C. J, 632, and 4th Ed., § 600, Dillon on Municipal Corporations, to the effect that:

"When the Legislature has delegated the power of eminent domain to municipal or public service corporations, or other tribunals or bodies, and has given them discretion as to when the power is to be called into exercise, and to what extent the courts will not inquire into the necessity or propriety of the taking."

The same authority (20 R. C. L. p. 184), however, declares that:

"It is obvious that, if property is taken in the ostensible behalf of a public improvement, which it can never, by any possibility, serve, it is being taken for a use that is not public, and the owner's constitutional rights call for protection by the courts."

And in 20 C. J. p. 629, it is stated:

"To authorize the condemnation of any particular land by a grantee of the power of eminent domain, a necessity must exist for the taking thereof for the proposed uses and purposes, and while such grantee is allowed a reasonable discretion in determining the necessity and the extent of the appropriation, whether any necessity whatever exists to warrant such appropriation, is a judicial question in which the landowner has a right to be heard."

And again in 10 R. C. L. p. 27:

"Of course, the Legislature cannot, by its mere fiat, make any use of property a public use, and, if it attempts to do so arbitrarily, the courts have the power to declare the enactment invalid."

The legislation of this state, referred to by counsel, has not changed the policy of the law with respect to the exercise of eminent domain.

On the contrary, the statutes provide that expropriation for switch or spur tracks is to be governed by the general expropriation laws of the state.

Those laws are to be found in the Civil Code, under the heading "Of the Compulsory Transfer of Property," the very first article (article 2626) of which impliedly, if not expressly, limits the obligation of yielding by the owner of his property to the community for public use, to cases where the property is needed for such general and public use, and, where such owner refuses, he may, by the authority of the law, be divested of his property to the extent needed for the public use.

It was settled in the early jurisprudence of this state, and the rule has been constantly followed, that the question as to what constitutes public utility and public purposes in matters of expropriation is for judicial determination, and that an owner, before surrendering up his property, has the right to contest in the courts, with the party claiming the right of expropriation, the necessity of the expropriation.

In the case of Jefferson & Pontchartrain Ry. Co. v. Hazeur & Co., 7 La. Ann. 182, the court even went so far as to hold, that, when an application was presented to the judge ex parte for the summoning of a jury to estimate the land, it was his duty to refuse to order the jury, if he knew at the time that the plaintiffs had sufficient land of their own.

In Lecoul v. Police Jury, 20 La. Ann. 308, it was held that the question whether the property sought to be expropriated is necessary for the public use or convenience must be judicially determined. See, also, Williams v. Judge, 45 La. Ann. 1295, 14 So. 57.

In the more recent case, N. O. Terminal Co. v. Teller, 113 La. 744, 37 So. 628, 2 Ann. Cas. 127, this court said:

"It is none of the business of the defendant property owner in an expropriation suit to inquire into the purposes for which the plaintiff corporation has been organized. That is the business of the state. But it is his business, and, in a sense, nobody else's whether the purpose for which the property is sought to be expropriated is a public purpose. Therefore, in defense to the expropriation suit, he can, as a matter of course, raise the question as to whether the purpose of the taking is public. Whatever may be the reasons why, in his opinion, the purpose is not public, he has the constitutional right to urge them and to prove them, and to have the courts pass upon their sufficiency."

The authorities cited settle beyond controversy the question that the expediency and necessity of expropriation, when sought to be exercised under the authority of eminent domain, is judicial, and that the owner may always contest such question before the courts.

The second question presented—that is, whether the matter of expediency or necessity is to be decided by the jury of freeholders or by the judge—in our opinion is equally well settled adversely to the contention of plaintiff.

The articles of the Civil Code, under the heading previously noted, beginning with article 2630, set forth the manner of procedure to be observed in expropriation suits, the calling and impaneling of the jury of freeholders, etc.

Article 2631 provides that the judge shall direct the clerk to give notice to the owner by serving a copy of the petition and designating the time at which a jury will be impaneled to assess the value of the land described.

Article 2632 provides that the sheriff and clerk shall make a list of freeholders from which a jury shall be *drawn to determine*, after hearing the parties and their evidence, *the value* of the land described, and *what damages*, if any, the owners might sustain in addition to the loss of the land by its expropriation.

Article 2636 provides that, if the owner is of the opinion that the quantity of the land sought to be expropriated exceeds that which is reasonably necessary for the purpose intended by the company, such owner shall file a special plea to that effect, and in such a case the jury shall determine, not only the *value of the land*, but also the *extent of the land* over which the company may exercise the right of expropriation.

It is to be observed that none of the articles of the Code on the subject confer on the jury the function of determining the necessity for expropriation. On the contrary, the articles specifically prescribe the only questions to be submitted to the jury, which are (1) to determine the value of the land and to assess the damages the owner might sustain; and (2) to determine the extent of the land to be expropriated, and this only in the event the owner contests the quantity claimed as being beyond that reasonably necessary for the purpose intended.

The Constitution only allows private property to be taken to the extent that the public interest demands, and no further, and certainly expropriation beyond the public interest and necessity would be obviously unconstitutional.

So that, in limiting the issues to be submitted to the determination of a jury of freeholders, it must be assumed that the lawmaker had in view the constitutional inhibitions referred to, and purposely omitted any reference whatever to the matter of expediency or public necessity, leaving that question to be otherwise determined.

In the Orleans-Kenner Case, reported in 136 La. 968, 68 So. 93, this court observed that articles 2631 and 2632 assume or presuppose that the right of the plaintiff to expropriate exists, or is conceded or not contested.

In N. O. Terminal Co. v. Teller, 113 La. 734, 37 So. 624, 2 Ann. Cas. 127, it was said that a jury of freeholders in an expropriation suit is not an ordinary jury, or, in other words, a tribunal or court of general jurisdiction, but is a tribunal or court of special jurisdiction, qualified to pass on those questions alone which the law has prescribed shall be submitted to it.

In that case, an expropriation suit, the defendant had filed a number of exceptions to the effect that the purpose for which the property was sought was not alleged, and that the suit was not otherwise brought or authorized in the manner required by law. The court, over the objection of defendant, referred the exceptions to the merits, to be tried by the jury, just as the plaintiff insisted should be done in the instant case.

On appeal, this court held that the exceptions should have been passed on by the court, and not left to the merits, or to the jury, noting, as we have already stated, the peculiar and limited functions and powers of a jury of freeholders in such cases.

It is true that in the case of City of New Orleans v. Ellis, Judge, 113 La. 555, 37 So. 209, the court used this language:

"From these premises it may well be argued that the question of the necessity of taking any land at all must be submitted to the jury, if raised by the owner," etc.

But it is to be observed that the owner in that case had not urged the want of necessity, but merely contested the quantity of the land claimed, a matter which the jury had a right to consider under the express terms of article 2636, Civil Code.

The expression of the court in the cited

case was not pertinent, and therefore cannot be said to furnish a precedent.

However, in a later case, Orleans-Kenner Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 975, 68 So. 95, this court held that the articles of the Code under the heading "Of the Compulsory Transfer of Property," were special and exceptional in character, in derogation of common right, and as such must be strictly construed.

"So construing them, the conclusion would seem to have to be that the jury of freeholders is not an ordinary jury impaneled to pass on the whole case, or, in other words, to try the case, and therefore possessed of all the powers of an ordinary jury, but that it is a specially constituted body in the nature of a commission, with no powers, and competent to try no questions, except such as are specially mentioned in said articles providing for its creation and defining its powers"—citing Railroad v. Avart, 11 La. 190; Remy v. Municipality, 12 La. Ann. 500.

Our opinion is that the court below properly ruled that the exceptions should be passed upon by the court, and not submitted to the jury, and that the manner and order of hearing said exceptions rests within the sound discretion of the court.

The application for the writs is therefore dismissed, at applicant's cost.