(130 So. 337)

**RIVER & RAIL TERMINALS, Inc., v. LOUIS-IANA RY. & NAV. CO.**

No. 29796.

July 2, 1930.

Rehearing Denied Oct. 7, 1930.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

Guion & Upton, of New Orleans, for appellee.

LAND, J.

The River & Rail Terminals, Inc., is the owner of a certain strip of land in the parish of St. Charles on the left descending bank of the Mississippi river. This strip is 40 feet front on the river, by 50 acres in depth between parallel lines, and is bounded below by the property of the New Orleans Refining Company, which is located on the river bank.

The main line of the Louisiana Railway & Navigation Company, running into New Orleans, crosses this strip and passes through the upper end of the refinery property, and the main line of the Yazoo & Mississippi Valley Railroad, entering New Orleans, crosses the same strip and passes through the lower end of the refinery property.

Plaintiff company complains in the present suit that on or about April 26, 1921, the Louisiana Railway & Navigation Company illegally and tortiously trespassed upon the strip of land owned by plaintiff company,

and, without right of any kind whatsoever, laid a spur track over and across the same into the property of the New Orleans Refining Company.

In the lower court, plaintiff company prayed for an injunction pendente lite, restraining defendant company from using the spur track, and from interfering in any way with the rights of possession, use, and ownership of the land by plaintiff company.

Plaintiff company further prayed that, after proceedings duly had, the injunction be made perpetual, and that defendant company be ordered to remove its spur track from the land of plaintiff company, and that its right be reserved to sue for such damages as it may have sustained.

Judgment was rendered in the lower court in favor of plaintiff company as prayed for, and defendant company has appealed.

1. Defendant company filed a plea to the jurisdiction of the district court of St. Charles parish, alleging that, under the Constitution and laws of this state: "The sole and exclusive jurisdiction, power and control of and over the said track and the service furnished thereby is vested in the Louisiana Public Service Commission alone, and to the exclusion of the courts, and particularly is said Louisiana Public Service Commission vested with the sole and exclusive power to hear, determine, order and control whether or not said track shall be maintained or removed, or said service continued or abandoned."

In support of the plea to the jurisdiction, defendant company annexed thereto the following rules and regulations adopted by the Louisiana Public Service Commission:

"75-b. Applications for permission to remove a spur track, side track, appurtenances or facility of any railroad operating in the State of Louisiana, must be accompanied by

the written consent of the party or parties for whom the spur track, side track, appurtenances, or facility built, or the parties last using the same. Should it be impossible to obtain such written consent, then the application for removal must be accompanied by evidence that at least thirty (30) days' notice of said application has been posted at the nearest agency station and on each side of the spur track, side track, appurtenances or facility, or at the station at which it is located."

"78. No switches or spurs in use in the State shall be removed or abandoned without the written consent of this Commission."

In further support of the plea to the jurisdiction, defendant company alleges: "That in the exercise of the jurisdiction vested in it and in the enforcement of its said Rules and Regulations there was duly adopted by the Louisiana Public Service Commission on April 30, 1927, and there was duly served on defendant on May 2nd, 1927, an order of said Louisiana Public Service Commission in the matter pending before it, entitled 'New Orleans Refining Company Inc., versus Louisiana Railway & Navigation Company, the Yazoo & Mississippi Valley Railroad, River & Rail Terminals, Inc., No. 810 of its docket,' ordering your defendant and the said Yazoo & Mississippi Valley Railroad Company and the said River & Rail Terminals, Inc., plaintiff in this suit, to show cause why they and each of them, should not be permanently prohibited from removing or taking up or otherwise interfering with the use and operation of a certain track (being the track in controversy in this suit) and pending hearing on said order prohibiting and restraining them and each of them from taking up or removing said switch or spur track, or from interfering with the use and operation of same in any manner or way, or from

in any manner violating the provisions of Rules 75-b and 78 of the Revised Rules and Regulations of the Louisiana Public Service Commission, all of which will more fully and at large appear by the order itself which was served on your defendant and a copy of the complaint which accompanied and was served with said order, both of which are filed herewith."

The outstanding issue in this case is whether the spur track in question is for a private or public purpose.

Section 2 of article 1 of the Constitution of 1921 declares that: "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation paid."

In Kansas City, S. & G. Ry. Co. v. Meyer, 166 La. 667, 117 So. 765, 767, this court declared: "It was settled in the early jurisprudence of this state, and the rule has been constantly followed, that the question as to what constitutes public utility and public purposes in matters of expropriation is for *judicial determination*, and that an owner, before surrendering up his property, has the right to contest *in the courts*, with the party claiming the right of expropriation, the necessity of the expropriation."

In the same case, after reviewing the decisions of this court on the subject, it is said at page 668 of 166 La., 117 So. 765, 767, of the opinion: "The authorities cited settle beyond controversy the question that the expediency and necessity of expropriation, when sought to be exercised under the authority of eminent domain, *is judicial*, and that the owner may always contest such question *before the courts*."

It is expressly held in Kansas City, S. & G. Ry. Co. v. Meyer, above cited, that Act No. 74 of 1902 authorizing a railroad company to expropriate private property for switch and spur tracks, and Act No. 267 of 1910, authorizing a railroad company to construct and operate industrial switch or spur tracks, have not changed the settled rule that the question as to what constitutes public utility and public purpose is for *judicial determination,* and that the owner may always contest the question of expediency or necessity before the courts, under section 2 of article 1 of the present Constitution, and under articles 2630–2636 of the Civil Code under the heading, "Of the Compulsory Transfer of Property."

The Louisiana Public Service Commission is a public board, and not a part of the established judiciary system of the state. It is not a court, in any proper sense of that term. The power of eminent domain is not conferred upon the Commission, and it is powerless, by the adoption of any rule or regulation, to take away from the courts of this state their exclusive right to pass upon the question as to what constitutes public utility and public purpose in matters of expropriation.

The Legislature itself "cannot, by its mere fiat, make any use of property a public use, and, if it attempts to do so arbitrarily, the courts have the power to declare the enactment invalid." 10 R. C. L. p. 27.

The rules and regulations of the Louisiana Public Service Commission, upon which defendant company relies, apply clearly to spurs and side tracks only when lawfully established, and not to the instant case, in which the very right itself of expropriation is at issue.

The exception to the jurisdiction was properly overruled.

2. In support of an exception of no cause of action, defendant company contends that:

"Where a public carrier railroad, by trespass and without title to the land involved, takes possession of it, builds its tracks and is operating its trains thereon, an action to compel it to remove its tracks and vacate the property will not lie unless the landowner can show that the railroad acted without his knowledge, consent or acquiescence or over his protest.

"And since a plaintiff cannot prove what he does allege, a petition fails to state a cause of action which simply discloses that a public carrier railroad has tortiously and without right or title, entered plaintiff's property, constructed its tracks and for nearly thirty days has been operating its trains thereon, but which fails to allege that the act of the railroad was done without plaintiff's knowledge, consent or acquiescence or over his protest." Def. brief, p. 6.

In our opinion, able counsel for defendant company are more technical than right in presenting the argument that the petition of plaintiff company should state in ipsissimis verbis that the tortious act of defendant company was committed "without plaintiff's knowledge, consent, or acquiescence or over his protest."

Plaintiff company alleges substantially that:

"The Louisiana Railway & Navigation Company has illegally and tortiously trespassed upon the land of your petitioner, and did, without right of any kind whatsoever, lay its track, on or about the 26th day of April, 1921, over and upon the lands of your petitioner.

"That the Louisiana Railway & Navigation Company has no title to said land, nor does it claim any title but has wantonly and in

violation of the rights of your petitioner taken possession of the land of your petitioner to the extent of laying its track thereon, and that unless enjoined and restrained from depriving your petitioner from the use of its property, the said defendant will continue to have its track on the land of petitioner, and will operate trains thereon, all in violation of the rights of your petitioner.

"That the act of the said Louisiana Railway & Navigation Company in taking possession of the land of your petitioner without right constitutes a tort, and unless an injunction issued herein to restrain defendant from the tortious and illegal use of petitioner's land, the tortious taking possession of its land will work an irreparable injury to petitioner who has no adequate remedy at law, and that therefore your petitioner is entitled to an injunction herein to restrain the illegal taking possession of petitioner's land."

Assuming the well-pleaded facts in the petition of plaintiff company to be true, for the purposes of the exception, we do not find it possible to presume, under the state of facts disclosed in the petition, that plaintiff company consented to or acquiesced in the taking of its land. The allegations of the petition are affirmatives pregnant with negatives, and the petition, in our opinion, sufficiently sets out a cause of action.

3. On the merits of the case, plaintiff company contends that the spur track was constructed for the private accommodation of both defendant railroad and the oil refinery, and to make the private business of both more profitable.

Neither the River & Rail Terminals, Inc., nor the New Orleans Refining Company is a public utility.

The spur track of defendant company crosses the land of plaintiff company in order to reach the loading station of the New Orleans Refining Company, a private enterprise whose premises the public has no right to enter, but is prohibited from so doing.

The public, therefore, cannot by right use the loading platform of the New Orleans Refining Company on its private property.

The mere fact that the spur track of defendant company intersects a gravel road, as shown on map "A," does not give to the use of the portion of the track which crosses the land of plaintiff company a public character. There are no shipping facilities at this intersection, nor on the land of plaintiff company, but the Norco station of defendant company is on its main line, if accessible at all by the gravel road. A shipper from this station over the main line of defendant company, north or south, would not use the spur track in making such shipment, as this track leaves the main line and ends at the loading platform of the New Orleans Refining Company. At that point, it connects with a spur track leading to the main line of the Yazoo & Mississippi Valley Road, which has its own Norco station on its own main line. These stations are a mile apart. Outbound freight for defendant company moves north from the loading platform and outbound freight for the Yazoo & Mississippi Valley Railroad moves south from this platform over these respective spur tracks.

The evidence clearly shows that the spur track of defendant company serves no other enterprise but the New Orleans Refining Company, and that it was constructed solely for the purpose of enabling defendant company to handle tank cars shipped out by the refinery.

There is nothing in the record to show that the public has ever used the spur track of defendant company, or that defendant company's spur track will accommodate a number

of plants on the river front, and will be open to all other business enterprises, present and future, in the same vicinity. The evidence fails to establish, in our opinion, that the entire public has the right to use the spur track, constructed by defendant company to the plant of the New Orleans Refining Company.

■ It is well settled that there must be a general public right to a definite use of the property, as distinguished from a use by a private individual or corporation which may prove beneficial or profitable to some portion of the public. Pittsburgh, etc., R. Co. v. Benwood Iron Works, 31 W. Va. 710, 8 S. E. 453, 2 L. R. A. 680; Kyle v. Texas & N. O. R. Co., 3 Willson Civ. Cas. Ct. App. (Tex.) § 436; Atlanta Stone Mountain & Lithonia R. Co. v. Bradley, 141 Ga. 740, 81 S. E. 1104; K. C., S. & G. R. R. Co. v. Louisiana W. R. Co., 116 La. 178, 40 So. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831.

Our conclusion is that the construction by defendant company of the spur track from its main line was for the purpose of serving an individual enterprise only and not for a public purpose.

4. Defendant company denies, in its answer, that plaintiff company is the owner of the property in dispute; but does not set up any title in itself.

It appears from deeds in the record that the Good Hope, Prospect, and Crevasse plantations are situated in the parish of St. Charles. The strip in question in this case forms a part of the Good Hope plantation.

These plantations, with an original depth of 80 arpents, were acquired by Henry L. Sarpy and others and sold to the Prospect Planting Company.

That company, on February 8, 1906, sold to Ernest Vicknair all of this property back to the 50-acre line, and retained the lands in the rear. In this act, the Prospect Planting Com-

pany reserved a servitude of way in favor of its lands in the rear of the 50-acre line, and across the front lands extending 50 acres from the Mississippi river, and sold by it to Vicknair.

This reservation is as follows: "A servitude of right of way is hereby established in perpetuity on and through the lands above described in favor of the rear lands of the Prospect Planting Company, the said road or passage way to be taken at the extreme upper line of the above described lands, and is to measure forty (40) feet front on the Mississippi River and to extend to the aforesaid rear lands of the Prospect Planting Company."

Vicknair purchased the above-described property, subject also to all contracts and rights of way, as follows:

"(2) A memorandum of agreement between the Prospect Planting Company and the Louisiana Railway and Navigation Company, executed under private signature on the 8th day of June, 1905.

"(3) A sale of a right of way granted by the Prospect Planting Company to the Louisiana Railway & Navigation Company, executed under private signature on the 8th of June, 1905."

In the memorandum of agreement above referred to between the Prospect Planting Company and the Louisiana Railway & Navigation Company, relative to the location and extension of its right of way over and across the Prospect Good Hope plantation, it is stipulated that: "Eight. The railroad company to furnish a switch at such point when as may be necessary by owner or owners of lands now belonging to the Prospect Planting Company."

On March 13, 1915, Ephraim Rosenberg purchased from Augustin Lasseign the three

contiguous plantations known as Good Hope, Prospect, and Crevasse plantations.

On April 13, 1915, Rosenberg sold to E. B. Rowan and Otto F. Briede an undivided one-third each of said property.

On June 12, 1916, Rosenberg, Rowan, and Briede- sold a portion of the property to the New Orleans Refining Company, and on June 22, 1917, they sold the remainder of the property to the plaintiff, River & Rail Terminals, Inc.

Prior to the sale to New Orleans Refining Company, Rowan, Briede, and Rosenberg had contracted to sell to that company 10 arpents front on the Mississippi river by 50 acres in depth (being the upper boundary line of the 40-foot strip presently claimed by plaintiff), but the New Orleans Refining Company discovered that there was a servitude over the 40-foot strip and refused to take title to that portion of Good Hope plantation.

So, in the act of sale of June 12, 1916, from Rowan, Briede, and Rosenberg to the New Orleans Refining Company, the property sold was to begin at a distance of 40 feet from the upper line of the Good Hope plantation.

The stipulations contained in the deed in 1906 from Prospect Planting Company to Ernest Vicknair appear also in all subsequent deeds, but there is no reference to same in the act of sale from Rowan, Briede, and Rosenberg to the plaintiff, River & Rail Terminals, Inc.

Referring to the physical condition of this 40-foot strip, claimed by plaintiff company in this case, E. B. Rowan testified on the trial of this case in 1928 as follows:

"That is a strip of ground that has been out of cultivation for a great many years. We have owned that property since 1915, and, at that time, it was not cultivated. It was grown up in underbrush, sapling trees, and

is a wild piece of ground. We have a store building on the front end of it, covering the entire forty-foot front at the river road. It is an impassable strip forty feet wide from the river to the fifty-acre line, crossed by ditches, and is covered with underbrush so that it is absolutely impassable.

"Q. Has anybody, since you acquired that property, used that as a roadway?

"A. No.

"Q. Is it possible to use it as one?

"A. Absolutely not."

Plaintiff company contends in its brief in this case that, as a matter of fact, the servitude of way has been lost by nonusage of ten years.

■■ Be that as it may, plaintiff company is in actual possession of the strip as owner, under a duly recorded title. Defendant company does not set up any title in itself, but merely denies that plaintiff company has title. Under these circumstances, it is not necessary that plaintiff should show a title perfect in all respects; and, even if there be defects in plaintiff's title, they are not available as a defense to defendant company, a mere trespasser. Jamison v. Smith, 35 La. Ann. 609; Stille v. Shull, 41 La. Ann. 816, 6 So. 634; Vicksburg, S. & P. R. Co. v. Sledge, 41 La. Ann. 896, 6 So. 725; Gould v. Bebee, 134 La. 123, 63 So. 848.

■ 5. Defendant company's claim of right to construct the spur under the eighth paragraph of the memorandum agreement is likewise unavailing. This agreement is as follows: "The railroad company to furnish a switch at such point when as may be required by the owner or owners of the land now belonging to the Prospect Planting Company."

It is certain that nothing contained in this agreement delegates the right to any owner of a portion of said lands to require and permit

the construction of a switch over the lands belonging to his neighbors.

It is apparent that the agreement does not create in defendant company any right to construct, at will, a switch over the land of any one of the owners. On the contrary, it imposes the obligation upon defendant company, on the demand of a particular owner or owners, to construct a switch on his or their land. The stipulation is clearly for the benefit of the respective owners of the property and not for the benefit of defendant company.

If defendant company had truly believed that it had the right, under the memorandum agreement, to construct this switch, it would not have found it necessary to conduct negotiations with plaintiff company for the acquisition of that right. Nor would defendant company have found necessary a midnight construction crew from Baton Rouge and an early Sunday morning invasion of the property of plaintiff company, in order to lay the spur track in this case.

By its own conduct, defendant company has repudiated the construction which it now asks this court to place upon the memorandum agreement.

Judgment affirmed.