ELLIS, Judge.
The State of Louisiana, through the Department of Highways, filed suit on July S, 1956, for the expropriation of two parcels of land together comprising 0.574 of an acre owned by the defendant, Ray Gui-dry, for highway purposes. Suit was filed in accordance with the authority conferred by Section 19.1 of Article 6 of the Constitution of Louisiana, LSA and the provisions of Part XVIII of Title 48 of the LSA-Revised Statutes, which authorize the state, through the Department of Highways to take property for highway purposes by ex parte orders in expropriation suits prior to judgment therein under certain conditions stated in LSA-R.S. 48:442, 443 and 444. Upon the showing made in the petition and exhibits, the Seventeenth Judicial District Court for the Parish of Lafourche issued an order of expropriation for the said land upon the deposit by the State of Louisiana of $1,775 in the registry of the court.
Following the deposit, in compliance with the order of expropriation, defendant filed a motion to dismiss the suit to vacate the order of expropriation on two grounds, viz.: (1) That the said act is unconstitutional and contrary to the due process clause of Article 1, Section 2 of the Constitution of the State of Louisiana of 1921, as it provides for the taking of property without allowing your defendant to be notified or heard before the taking, and attempts to vest title in the State of Louisiana without notice, to your defendant and without just and adequate compensation being paid contrary to the provision of Article 1, Section 2 of the Constitution of the State of Louisiana; and (2) Plaintiff “would need only a servitude over his property and by these proceedings the plaintiff is attempting to deprive your defendant of mineral producing property which plaintiff cannot use for a public purpose or for a public utility or use.”
The same grounds upon which the defendant now pleads the unconstitutionality of Act 107 of 1954, LSA-R.S. 48:441 to 460, inclusive, were recently considered by the Supreme Court of Louisiana in the case of State v. Macaluso, 235 La. 1019, 106 So.2d 455, and the constitutionality of the Act was upheld. It is, therefore, unnecessary that we consider defendant’s first ground for dismissal.
The District Court on the motion to dismiss on the above two grounds sustained the constitutionality of the Statute and held that the property was taken for public purpose and, therefore, overruled the defendant’s motion. On the merits, the lower court awarded the defendant “the sum of $500.00 for the value of the property sought to be expropriated, as well as the sum of One Thousand, Two Hundred Seventy-five and no/100 dollars, representing damages to his property as well as the sum of Eight Hundred Forty-seven and 62/100 Dollars, representing the value of the minerals under the property expropriated herein.” This award is completely in accord with the amount deposited by the plaintiff in the registry of the court, to-wit: $1,775, with the exception that the lower court awarded $847.62 for the value of the minerals under the property expropriated, probably upon the theory that full ownership carries with it all above and below the land, LSA-Civil Code, Art. 505. The land expropriated, comprising slightly more than % acre, was a part of 114 acres which the defendant owned, and which was under lease and from the total acreage he has received some $56,000 in two years in gas and oil royalties. The defendant’s property was in a unit which, under LSA-R.S. Title 30, Sec. 10 (B) by operation of law placed defendant’s property in the same category as if oil and gas had been produced from his tract by a well drilled thereon. Under this state of facts the minerals had been reduced to possession by the lessee, who thereupon became the owner, subject to the terms of the lease,, and who also had the right under LSA-R.S. 9:1105 to protect and defend the lease and mineral rights in the same manner as may be the ownership or possession of oth *234 ■er immovable property by the holder of such rights. The lessee and/or owner of the minerals was never made a party to this suit, and, therefore, could not possibly be deprived of their property.
Plaintiff's prayer for expropriation of the land in full ownership would include all property rights which would include the mineral rights in and under the land. Either the plaintiff did not know the status of the minerals or did not intend to expropriate in full ownership in its fullest and strictest sense, as inclusive of the minerals, for nowhere in its petition did it mention the minerals, nor did it deposit in the registry of the court any money to be paid as a value of the minerals separately and apart from the money deposited as the value of the land in full ownership. However, we can only take the pleadings, the record, and judgment as we find them and must consider that the plaintiff expropriated the land in full ownership. In its brief plaintiff states that it deposited in the registry of the court the amount which the lower court awarded for the value of the mineral rights of the defendant in the land, but asked that this be reduced to one-half the amount awarded and so deposited, for the reason that the amount awarded was based upon a full acre, whereas the acreage sought to be finally expropriated amounts to approximately one half of an acre.
We are therefore faced squarely with the question as to whether the plaintiff has shown on a motion of the defendant to dismiss the suit for the reasons set forth in his second ground, whether the taking of full ownership is for public purpose, or to put it another way, whether the plaintiff needs full ownership in order to complete the proposed road and ferry slip for the reinstatement of ferry service across the In-tercoastal Canal. The defendant contends that a servitude is all that is necessary and sufficient.
In order to secure the ex parte expropriation of the defendant’s property, plaintiff alleged in part:
“2. That your petitioner desires and proposes to construct in the Parish of Lafourche a certain project designated as State Project No. 412-02-02, Intracoastal Waterway Ferry (Bayou Blue), which project will consist of the construction of approaches and ramps for new ferry on the Intracoastal Canal Waterway, being a portion of that certain State Route known as LA. 316, and said proposed project begins at a point three hundred (300) feet, approximately, southeasterly of the existing southerly ferry ramp on the Intra-coastal Canal Waterway at Bayou Blue and extends to a point four hundred (400) feet, approximately, northwesterly from the existing northerly ferry ramp on the said Intracoastal Canal Waterway.
“3. That State Route La. 316 is a part of the State Plighway System.
“4. That the construction of the said project will be greatly conducive to the public interest, convenience and safety and will be an important improvement in the State Highway System.
"5. That your petitioner has surveyed and laid out the center line of the right of way of that portion of State Route La. 316 within said project as the same will exist, according to said project, and after said project is completed.
“6. That the Board of Highways adopted a resolution, as required by law, dated March 14, 1956, a certified copy of which is marked ‘Exhibit P-l’ annexed hereto and made a part hereof, said resolution declaring that it is necessary and useful to immediately take the property described hereinafter for highway purposes.
“7. That the width of the right of way for said project has been fixed by the Chief Engineer of the Department of Highways, as shown by the certifi *235 cate of said official marked ‘Exhibit P-2’, annexed hereto and made a part hereof.
“12. That the location and design of the improvements proposed within and by said project No. 412-02-02 are in accordance with the best modern practices adopted in the interest of the safety and convenience of the traveling public, as shown by the certificate executed by the Director of Highways, the Chief Engineer, the Road Design Engineer and the Bridge Engineer, which is marked ‘Exhibit P-4’ annexed hereto and made a part hereof.
"13. That, in order to construct said project in a manner and mode conducive to the public interest, convenience and safety, it is necessary that petitioner acquire the above described property, designated as Parcel No. 1 and Parcel No. 2, in full ownership for the approaches and ramps of a new ferry on the Intracoastal Canal Waterway, and the acquisition in full ownership of said property is necessary for the work and purposes of your petitioner and in order that petitioner can properly fulfill its functions for a needed public improvement. (Emphasis added.)
“17. That your petitioner is entitled to and desires the expropriate the two (2) tracts or parcels of land described hereinabove in the manner authorized by Article VI, Section 19.1, of the Constitution of Louisiana for the year 1921, as amended, and Title 48 of the Revised Statutes of 1950, Sections 441 to 460, inclusive.”
Plaintiff takes the position that the right of the State of Louisiana to take the full ownership of the property rather than a servitude is not a matter that is subject to judicial review. Plaintiff’s argument as contained in his brief on this question is as follows :
“Counsel for defendant, in questioning witnesses, attempted to elicit evidence on the right of the State of Louisiana to take the full ownership of the property rather than a servitude. This is not a matter that is subject to judicial review since the question of the taking of a fee simple title or servitude is entirely within the discretion of the officials of the Department of Highways, and not subject to judicial review; this was argued on the exception of constitutionality and ample authorities cited at that time to substantiate the correctness of this view. Courts cannot inquire into the need, expediency or advisability of the taking and they cannot inquire into the interest to be taken.
“ ‘Defendants insist that a fee simple title was not necessary to accomplish the purpose contemplated by the legislation. But the power to decide whether such a title was needed is, by the legislation, conferred upon the Secretary and, in the absence of bad faith or abuse of discretion, such determination is not subject to judicial review. Rindge Co. v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; Joslin Manufacturing Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Sears v. City of Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L.Ed. 688; Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135. Determination of the extent, amount or title of property to be taken by an Administrative Department, is, in the absence of bad faith, final. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; Sears v. City of Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L.Ed. 688; United States v. Gettysburg Electric Railway Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; Barnidge v. United States, 8 Cir., 101 F.2d 295; United States v. Threlkeld, 10 Cir., 72 F.2d 464; certiorari denied, 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708; 2 Cooley, Constitutional Limitations (8th Ed. 1927) pp. 1145-1147; 1 Lewis, Eminent Domain (Ed. 1909) Sec. 370, p. 677. The decision as to such questions rests wholly in legislative discretion, subject only to the restraints that just compensation must be paid and the determination made in good faith.’ United States v. Meyer [7 Cir.], 113 F.2d 387.
*236 “ ‘In other words, it seems to me to be the law that it is beyond the judicial function to determine that a fee simple, subject to an easement is sufficient for the Government’s purposes, when the Government in carrying out legislative purposes, asserts that nothing less than the fee simple would be adequate. See Roanoke City v. Berkowitz, 80 Va. 616, 623: “The view thus expressed is fully supported by the adjudged cases, which hold that the question as to the degrees or quantity of interest to be taken is, like other political questions, exclusively for the legislature; and that when the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. De Varaigne v. Fox, Fed.Cas.No.3,836, 2 Blatchf. 95; People v. Smith, 21 N.Y. 595; Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015; Beekman v. Saratoga & S. R. Co., 3 Paige 45, 22 Am. Dec. 679, and cases cited in the note, at page 692.”
“ ‘It is therefore my conclusion that this court has no power, in awarding just compensation to the intervening Belle Haven property holders, to reduce the fee simple taken by the Government by imposing easements thereon or limitations on the use of the property taken by the Government.’ United States v. Certain Parcels of Land in Fairfax County, Virginia [D.C.], 89 F.Supp. 567.
“ ‘This action was commenced by the Attorney General pursuant to a request of the Acting Secretary of the Army with a complaint in condemnation filed August 5, 1947. In the complaint the United States sought an “easement for a period of 15 years.” The complaint was amended January 16, 1948, to make the period of the easement run from June 15, 1943. But on November 8, 1948, the complaint was amended to condemn the fee simple title to the land here in issue. Sommonds takes the position that since the amended complaint “did not set forth any additional reasons for the increased estate, nor show the necessity or authority for the taking of the fee in place of the easement previously taken,” the United States had exceeded its power of eminent domain.
“ ‘The taking of property or an interest in property, by eminent domain, is permissible only when the property so condemned will be devoted to a public use. United States v. Certain Lands in City of Louisville, 6 Cir. 1935, 78 F.2d 684, 686; United States ex rel. Tennessee Valley authority v. Welch, 1946, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 * * *’.
“ ‘Therefore, where the statute which is being implemented contains Congressional authority to take property by eminent domain proceedings (here the River and Harbor Act), the officer authorized to act is under the duty of exercising his discretion as to the estate he elects to take. His discretion so exercised is subject to be attacked only for plain abuse or fraudulent action,’ ”
We do not interpret the authority granted to the Legislature under Article 6, Section 19.1 of our Constitution, adopted Nov. 2, 1948 and effective Dec. 10, 1948,[1] nor Act 107 of the Legislature of the State of Louisiana for the year 1954 which is also LSA-R.S. Title 48 of 1950, Part 18, Sections 441-446, inclusive, and enacted pursuant to the constitutional grant of authority, supra, as granting any right other *237 than authorizing an ex parte expropriation prior to trial and judgment. When the Department of Highways has filed its suit in accordance with the provisions of LSA-R.S. 48:441-460, it is entitled to an ex parte expropriation of the property, hut this does not relieve the department of the burden of proof as to the allegations of its petition, should the defendant contest the validity of the taking on the grounds that the property was not expropriated for a public use.[2] As to the proof and its burden, the act provides in Section 454 that: “Except as provided in this Part, these suits are tried in accordance with the provisions of the general expropriation laws.” Under the general expropriation laws the burden of proof was upon the plaintiff to prove his suit, and as stated, the only exception in this act is as to the measure of compensation. Additionally under LSA-R.S. 48:442 “Contents of petition” the act reads:
“The petition shall contain the allegations required in R.S. 19:2.1 but shall have annexed thereto the following:
“(1) A certified copy of the resolution adopted by the board of highways, with the concurrence of not less than two-thirds of its members, declaring that the taking is necessary or useful for the purposes of this Part.”
LSA-Revised Statute 19:2.1 was a part of the general provisions of the expropriation law of the State of Louisiana prior to the enactment of Act 107 of 1954, now embodied in LSA-R.S. 48:441-460, inclusive. Also contained in the general provisions of the expropriation law under LSA-R.S. 19.1 which states: “As used in this Part, the term ‘property’ means immovable property, including servitudes.”
It is well settled in our jurisprudence that laws dealing with expropriation are special and exceptional in character, in derogation of common rights, and as such must be strictly construed. Orleans-Kenner Electric R. Co. v. Metairie Ridge Nursery Co., 1915, 136 La. 968, 68 So. 93; Kansas City, S. & G. Ry. Co., v. Meyer, 166 La. 663, 117 So. 765; Louisiana Highway Commission v. Cormier, 13 La.App. 459, 128 So. 56.
In LSA-Revised Statute Vol. 14 at the beginning of Title 19, “Expropriation” we find an article upon the subject by Hon. Arthur B. Hammond, as a member of the Baton Rouge Bar, and we take the liberty of quoting what we believe to be pertinent to the case at bar, to-wit:
“Public Use and Necessity. Both under the Constitution and statutory laws of Louisiana there are two essential requirements for the exercise of the power of expropriation, viz.: (1) the taking must be for public purpose and utility, and (2) compensation must be paid.
“Considering first public purpose and utility, our Supreme Court, in the case of River & Rail Terminals v. Louisiana Ry. & Nav. Co., 1930, 171 La. 223, 130 So. 337, affirmed a prior decision where it said that ‘the question of what constitutes public utility and public purpose (in matters of expropriation) is for judicial determination’ and not for determination by any other governmental body such as the Public Service Commission.
*****
“Extent Of Estate Taken
“The general rule as to the extent and nature of the estate which may be acquired in expropriation proceedings is well expressed in the case of Shreveport & R. R. Val. R. Co. v. Hinds, *238 1899, 50 La.Ann. 781, 24 So. 287, where the court said that if it were necessary to take the fee then the fee may he taken, but ‘if the public needs do not require it, and a less estate will meet the public wants, the fee cannot be taken.’
“However, if all that is needed is a servitude over the land, but plaintiff sues to expropriate the fee, then if defendant believes that a servitude will suffice it is up to that defendant to plead that defense. If he does so. plead then the burden is on the plaintiff to prove that he needs the greater' estate. Knox v. Louisiana Ry. & Nav. Co., 1925, 157 La. 602, 102 So. 685; New Orleans Pac. R. Co. v. Gay, 1880, 32 La.Ann. 471.
“If a servitude only is taken it continues in effect so long as the land is used for the purposes for which it was expropriated and lapses for nonuse for a period of ten years. Louisiana Power & Light Co. v. Mosley, La.App. 1944, 18 So.2d 210. But when the fee has been acquired the former owners retain no rights therein. If afterwards the public use thereof is abandoned or if the land is put to a different use, the title is not impaired thereby and does not revert to the former owner. Maguire v. Police Jury of Caddo Parish, 1941, 197 La. 247, 1 So.2d 92.
* * *■ * *
“Proof
“On the question of ‘necessity’ the burden of proof is entirely on the one seeking to expropriate. In Louisiana Ry. & Nav. Co. v. Xavier Realty, 1905, 115 La. 328, 39 So. 1, the Court said that
“ ‘A railroad company seeking to expropriate the property of a'citizen assumes the burden .of proving the necessity in the particular case for the exercise of the power of eminent domain, and that, failing to establish that fact, is should take nothing by its demand’.
“The question of ‘necessity’ even prior to the 1948 Act was never a jury question but was one for the Court to decide, Kansas City, S. & G. R. Co. v. Meyer, 1928, 166 La. 663, 117 So. 765, and under the present system must necessarily remain so. * * * ”
Upon the question of the extent of the estate of the defendant to be taken, that is, whether in fee or a servitude, we find a positive answer in the case of Knox v. Louisiana Ry. & Nav. Co., supra [157 La. 602, 102 So. 687], with Chief Justice O’Niell as the organ of the court, and we quote:
“Of course, if a servitude is all that the railroad company needs that alone may be expropriated. Therefore, when a railroad company sues to expropriate a tract of land, if the defendant believes that a servitude upon the land will serve the railroad company’s purpose, he may plead that defense, and the burden will then be upon the railroad company to prove that it needs the land in full ownership, and not merely a servitude upon it. John T. Moore Planting Co. v. Morgan’s La. & T. R. & S. S. Co., 126 La. [840] 841, 53 So. 22. But if, in such cases, the defendant does not plead that a servitude on the land would answer the purposes of the railroad company, or if the defendant acquiesces in the plaintiff’s demand and asks for compensation for the value of the land itself, then there is no issue raised as to whether the land in full ownership, or only a servitude upon it, should be expropriated, and the plaintiff is not then required to prove that a servitude upon the land would not serve its purposes as well as would the land in full ownership.”
The holding of the Supreme Court of Louisiana in the Knox case with par *239 ticular .reference to the quote was reaffirmed in the case of Police Jury of Evangeline Parish v. Thibodeaux, 158 La. 573, 104 So. 372. We also find the Knox case quoted in the Louisiana Law Review for the year 1948, being Vol. 8, p. 555, in an article which stated: “Whether the expropriation comprises the property in full ownership or whether it gives only a right of way depends upon the provisions ■of the particular statute.”
We also find the following comment in an article in the 22 Tulane Review, 1947-1948, as follows: “The Governmental authority to acquire property rights extends only to the right or estate in land actually needed. For example, title cannot he condemned if a servitude or easement is sufficient to meet the public need.” In the footnote the case of Shreveport and R. R. Val. Ry. Co. v. Hinds, 50 La.Ann. 781, 24 So. 287, is cited as authority for the quote.
We believe the Louisiana Jurisprudence as above cited and quoted to be controlling in this case, rather than the Federal authorities relied upon by plaintiff in the lower court. In the absence of an express provision the application of strict construction rule embedded in our jurisprudence would prohibit an inclusive interpretation under a general intent, or context, theory by the Legislature from the general wording of the act. There is no distinction between the right to expropriation conferred upon public utilities and the Department of Highways except as contained in Act 107 of 1954, now LSA-R.S. 48:441-460. Under the latter, the Department of Highways can obtain the ex parte expropriation prior to trial and judgment. It still must proceed to trial and obtain a judgment if the defendant wishes to contest its need or right to expropriate — that is — not for a public purpose, and/or that the compenstion offered is not adequate. All provisions of our general expropriation laws, as well as all jurisprudence enacted and established prior to the special act and statute under consideration which are not specifically or clearly shown by a strict interpretation of the latter act to have been abrogated or repealed, are still in full force and effect. Therefore, all such prior enactments and jurisprudence are to be considered in conjunction with Act 107 of 1954, LSA-R.S. 48:441-460.
On the motion to dismiss, no testimony was offered by either party. The exact procedure taken is not shown as a copy of the minutes of the Court is not included in the record. The burden was upon the State of Louisiana, through its department of Highways, to prove the necessity for full ownership rather than a servitude. There is, however, proof to the contrary annexed to the plaintiffs petition contained in the resolution of the board of highways authorizing construction of certain projects throughout the state of Louisiana as follows, and we quote therefrom:
“Whereas the Board of Highways contemplates and plans to construct certain projects for the improvement of various highways throughout the-State of Louisiana, and
“Whereas, the projects presently planned by the Board of Highways are hereinafter set forth, to-wit:
* * * =K =1= t-
“State Project No. 412-02-02 Intracoastal Waterway Ferry iBayou Blue)
State Route La, 316 Lafourche Parish
“This project begins at a point approximately 300 feet southeasterly of the existing southerly ferry ramp on the Intracoastal Canal Waterway at Bayou Blue, and extends to a point approximately 400 feet northwesterly from the existing northerly ferry ramp on the said Intracoastal Canal Waterway. The items of work on this project consist of the construction of ap *240 proaches and ramps for a new ferry on the Intracoastal Canal Waterway.
* * * * * *
“Whereas, the construction of the above mentioned projects will be conducive to the public interest, convenience and safety and will enable this Board of Highways to properly fulfill the functions imposed upon it by law, and
“Whereas, the proper construction of said projects is dependent upon the acquisition of the right of way as fixed by the Chief Engineer of the Department of Highways for each of said projects and such other rights as may be appurtenant thereto:
“Now, therefore, be it resolved by the Board of Highways, two-thirds of its members concurring, that it hereby determines and declares it to be necessary and useful to take, by expropriation for highway purposes and in the manner provided by law, in servitude or in full ownership the property a/nd property rights not otherwise acquired which are needed for the proper construction of each of the said projects.” (Emphasis added.)
We therefore see that the Department of Highways in its resolution which is required as a part of the procedure under LSA-R.S. 48:442(1) for the ex parte expropriation of property determined and declared it to be necessary and useful to take by expropriation for highway purposes “in servitude or in full ownership.” This declaration could only mean that either a servitude or full ownership would suffice for the construction of the proposed project. From the nature of the project we can think of no reason why a servitude would not be sufficient. The Department of Highways was going to construct the roadway approaches to the Intracoastal Waterway Ferry located near the intersection of Bayou Blue with the canal, and merely because it was necessary to excavate approximately 65 feet of the dirt in order to have a ferry “slip” coming from the Intracoastal Canal to the end of the roadway approach would not require full ownership of the land. The rights included within the servitude would include the right to construct a public project by filling or excavating as necessary for the completion of the project. Plaintiff also offered testimony as to need or necessity on the trial as to the question of compensation or value. As to need for full ownership, plaintiff’s position as reflected by the testimony was to the effect that it would be necessary to excavate and fill and dispose of excess dirt and in order that there be no question as to their rights they requested full ownership. We see no merit in this position, nor necessity for anxiety on the part of plaintiff. The project can be completed under the property rights flowing to plaintiff from a servitude. To take the fee or full ownership which would include the mineral rights, which in this case are most valuable, and in any case might be valuable, when the full ownership is not needed and a servitude would be all that was necessary for the construction of the public improvement would be grossly inequitable and violative of the settled jurisprudence of Louisiana. It is common knowledge that the acreage now used for highways is enormous but in comparison with the acreage required for the super or through highways will be insignificant. We see no need for taking the minerals under full ownership. Directional drilling is an established fact. In view of the vast acreage necessary in the future for construction of highways and the rich mineral deposits which might exist thereunder the Department of Highways should be limited to surface rights which would include the right to use or do with the land within the right-of-way all things necessary for the construction of the public project. The State should never be allowed to infringe upon the private property rights of the individual owners where the proposed public project, such as a highway, can be *241 constructed within the property rights included in a servitude.
We are therefore of the opinion that the State of Louisiana, through the Department of Highways, should be divested of its title of full ownership, and awarded a servitude.
We now come to the question of compensation and damages. The burden of proof under the Act on this question is placed upon the defendant. LSA-R.S. 48 453. We believe that the value established by the plaintiff’s witnesses as to the value of the land taken, viz., $500, for the live oak tree the amount of $250, and for the replacement of fences the sum of $150 to be proven and correct. As to value, plaintiff’s witnesses appraised the value or compensation to be paid defendant upon the assumption that plaintiff was seeking a servitude and not “full ownership” as inclusive of the minerals. Defendant’s testimony as to these items falls far short of the proof necessary to overturn the values established by plaintiff’s witnesses as to these items.
Defendant in addition claims the sum of $4,500 for the construction of a bulkhead which he contends will be necessary to prevent caving and wash, along his property, however, this item is based upon his belief that in the future without the bulkhead there will be wash and caving in, and there is no other testimony to support him in this claim. In addition, there is no testimony to connect any future caving or washing with the construction of the approaches to the ferry landing and the excavation of the ferry slip. There is testimony that the banks of the Intracoastal Canal do wash as a result of waves from boats and other natural causes. This item will be denied. Defendant also contends that the sum of $875 estimated by the plaintiff’s witnesses as being the value of reconstructing a shell road on the east side of the project which had been destroyed and which was included in the parcel of land taken by the plaintiff to the east of the old right of way, was totally inadequate. He bases this contention upon the fact that the shell road destroyed connected a house which he rents with the main road, and also a shell yard to the east of the house and on the bank of the Intracoastal Canal. He testified that since the ferry slip had been dug, which is 69 feet in length, and the approaches to the ferry landing had been reconstructed a distance of approximately 400 feet, that it had left a condition which necessitated his building a road from the shell yard south around the house and then parallel to the newly constructed approaches a distance of approximately 400 feet. In addition he testified that on the west side of the ferry slip and the newly constructed approaches he had a bridge across Bayou Bleu which lead to another building or house on his property, and that as a result of the excavation of the ferry slip and the construction of the approaches it would be necessary that he build a new bridge relocated to the north of the newly constructed approaches, and that a road be constructed from this bridge to the house, and that culverts would be necessary for drainage ditches in his pasture along the course of the proposed road. To substantiate the cost, defendant produced Mr. Joseph The-riot, a contractor of Houma, Louisiana, who testified that he had gone on the property prior to the beginning of the excavation for the new ferry slip and the approaches to the landing and had been told by the defendant that this construction work would be necessary when the highway was reconstructed and the ferry slip dug. Based upon the defendant’s statement of necessity, this witness estimated the cost of grading and ditching of roads at $300, shells for surface of road, $875, 48 feet of culvert, $72 labor and equipment to lay culvert, $80, material for bridge, $500, labor and equipment for bridge, $200, dirt for bridge runways, $80, or a total of $2,107. While we believe that the estimate of the costs of building the roads, bridges, and placing the culvert in existing ditches is reasonable, we do not find the necessary *242 testimony in this record to prove the necessity for building such roads and moving the bridge across Bayou Blue, as there is no testimony to show that shorter roads could not be constructed to the new highway. The inaccessabiíity of joining the necessary road on the east and the west side of the newly constructed approaches to the ferry landing is not proven. We do not know whether there are ditches, or the depths, if there are any, along the east and west side of the road, nor whether there is a high fill from the top level of the road to the ditch so as to prevent the construction of an intersecting road. Nor do we know whether the old road which was destroyed connected with the highway north of the present ferry slip. We are inclined to believe that there is merit in defendant’s demand but this proof is insufficient. He has not borne the burden placed upon him by law. The lower court evidently came to the same conclusion as it awarded the sum of $875 which is the value placed upon the shell road destroyed by plaintiff’s witnesses.
All legal costs in this case must be taxed against and paid by the plaintiff. It sought full ownership but tendered, according to their own witnesses, the value of a servitude. The defendant was compelled, aside from being invested with the legal right, to oppose the need or public purpose of full ownership and has been successful therein. In the case of State Through Department of Highways v. Barineau, 225 La. 341, 72 So.2d 869, 872, the Supreme Court of Louisiana stated:
“Although the lower court rendered the proper judgment, the statement contained in the Court’s ‘Reasons’ is incorrect, since the general rule that the State and its political subdivision, public boards or commissions are exempt from payment of court costs except ‘stenographers’ costs for taking testimony’, LSA-R.S. 13:4521, does not apply in expropriation proceedings. In these, the State is liable for costs, unless tender of the true value of the land has been made before proceeding to a forced expropriation, in which case ‘the costs of such proceedings shall be paid by the owner’, LSA-Civil Code, Art. 2638; LSA-R.S. 19:12; Louisiana Highway Comm. v. Bullis, 197 La. 14, 200 So. 805; American T. & Tel. Co. v. Maguire, 219 La. 740, 54 So.2d 4. To hold that the owner must pay his own costs in resisting attempts to take his land without his consent would nullify to a certain extent the constitutional guarantee of just and adequate compensation, Art. 1, Sec. 2, La.Const. of 1921, which ‘clearly contemplates that the class of expenses usually taxed as costs would be included as an element of the owner’s damage * * *.’ Westwego Canal & Term. Co. v. Louisiana Highway Comm., 200 La. 990, 9 So.2d 389, 392; see, also, Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612; Gulf Shipside Storage Corp. v. Thames, 217 La. 128, 46 So.2d 62.”
For the above and foregoing reasons, we conclude that the State of Louisiana could and should not acquire in these proceedings the full ownership of the property in question inclusive of the minerals for the following reasons:
1. The minerals have been reduced to possession and ownership by a lessee who is not before the court.
2. The full ownership is not needed for the construction of the proposed project as clearly shown by the resolution of the Board required to be annexed to plaintiff’s petition, and even if this resolution stated that full ownership was necessary there is no evidence that convinces us of the need for property rights greater than those included within a servitude.
3. And even should our interpretation of the application of the general appropriation laws and prior jurisprudence in conjunction with LSA-R.S. 48:441-460 be erroneous and' instead, the Federal authori *243 ties cited by plaintiff should govern, then plaintiff still should be divested of title in fee simple or full ownership as constituting an abuse of discretion under the facts of this case.
However, we rest our judgment squarely upon the reasons given for conclusions (1) and (2).
It is therefore, ordered, adjudged and decreed that the judgment of the District Court awarding full ownership in and to the parcels of land expropriated be and the same is hereby reversed and it is now ordered, adjudged and decreed that the plaintiff be granted a servitude in and upon the said parcels of land.
It is further ordered, adjudged and decreed that the judgment of the District Court awarding compensation and damages be amended by striking therefrom the sum allowed for the value of the minerals under the said land.
It is further ordered, adjudged and decreed that plaintiff pay all costs.

. “The Legislature shall have authority to authorize the taking of property for highway purposes by orders rendered ex parte in expropriation suits prior to judgment therein provided that provision be made for deposit before such taking with a court officer for the amount of appraisals of the property so taken and damages to which the owner thereof may be entitled, if any, which appraisals may be made in such manner as may be provided by law either before or after institution of suit, and need not be by judicially appointed appraisers. (Added Acts 1948, No. 548, adopted Nov. 2, 1948. Eff. Dec. 10, 1948.)”

. “The right to take possession and title in advance of final judgment, as provided herein, is in addition to any right or authority conferred by the laws of this state under which expropriation proceed-lugs may be conducted, and shall not be construed as abrogating, eliminating or modifying any such right or authority. Added Acts 1954, No. 107, § 1.” LSA-R.S. 48:45a