## LOUISIANA HIGHWAY COMMISSION v. FERGUSON et al.

### No. 1321.

Court of Appeal of Louisiana. First Circuit.

March 6, 1934.

Chas. A. Holcombe, of Baton Rouge, for appellants.

L. L. Morgan, of Covington, and E. R. Stoker, of Baton Rouge, for appellee.

MOUTON, Judge.

A strip of land measuring .49 of an acre belonging to defendants was expropriated by plaintiff, Louisiana Highway Commission, for road purposes.

The case was tried by a jury, which rendered a verdict in favor of defendants for $325, and which was approved by the court.

The defendants are claiming $1,000 for the strip consisting of practically one-half acre and also $200 for damages alleged to have resulted from the expropriation, aggregating the sum of $1,200.

The difference between the amount granted by the jury and the sum claimed by defendants constitutes the bone of contention between the litigants.

A paved highway between Baton Rouge and Hammond was constructed on the land expropriated which was bought by defendants not long before its construction. Mr.

Brashears, one of the defendants, admits that when they bought they knew this highway was coming through this land; that it was acquired for speculative purposes, but purely on account of its advantageous location, and not in anticipation of the projected highway.

The defendants bought 18 acres of land for $3,000 and which was not separated in "piece or value" when purchased. After they had acquired, between themselves, they valued 16 acres at $1,600, and 2 acres at $1,400 or $1,500, so Mr. Brashears testifies. The land was therefore purchased for the average price of $170 per acre.

Messrs. Cockren, S. B. Easterly, J. D. Easterly, Wilkerson, Benton, and Minton testified to the value of the land at the time of the expropriation. Four of these witnesses fixed the value of the strip taken for the roadway at the sum of $200, one at $100. These witnesses are farmers, though not experts in land values, are residents of Livingston parish, men of mature age, who believed, as they testified, that they were qualified to make a fair estimate of the value of the land expropriated.

Mr. Cockren, one of these witnesses, had, as the record shows, considerable experience in land transactions in the sale and purchase of lots situated in Denham Springs, and lands adjoining thereto, the vicinity where the strip in question is located. His estimated value was $200, same as that of the other estimators, excepting one, as before stated, whose appraisement was $100.

■ This appraisement, we understand, was based on its market value at the time of the expropriation, the proper test. New Orleans Pac. Ry. Co. v. Murrell, 36 La. Ann. 344.

Mr. Felder, the record shows, got $1,000 from plaintiff commission for .39 of an acre of land separated by a roadway from the sliver that has given rise to this contest. It is shown that Mr. Felder had improvements on the land bought from him, but these were removed at the expense of the highway commission; hence, it appears that he actually received that amount for a strip of land, one-tenth less in acreage to the strip taken from defendants herein.

Most of the witnesses, above named, said that the amount paid to Mr. Felder for that strip of land by the highway commission was much too high. In referring to the amount so paid Mr. Felder for this .39 of an acre of land, Mr. Cockren, one of the estimators, said: "That is the most foolish thing I know

of them doing." This payment by the highway commission is no test of value.

The members constituting the highway commission are public officers, and if presumptions are to be indulged in, it must be presumed that they have properly discharged their functions in buying this strip from Mr. Felder and for the benefit of the public.

Messrs. Klein and Smith were witnesses for defendants in reference to the value of the strip and the damages which it is contended resulted from its expropriation.

Mr. Klein is a real estate broker and Mr. Smith had been engaged for about three years in land transactions in Livingston parish.

Mr. Klein fixed the value of the land taken at $500 and the damages at the same amount. His estimate was therefore $300 for the land value, above the appraisement of all the witnesses for plaintiff, except one.

■ The verdict of the jury was for $325, which, however, does not say whether part of this amount was for damages. It is hardly possible that any damages were included in the sum so decreed by the jury, as the large preponderance of the evidence clearly shows that the land had been unquestionably enhanced in value by the building of this paved highway.

Mr. Smith, also termed an expert in land values by defendants, testifies that the highway commission did not pay too much to Mr. Felder for his strip, but should have paid him $1,200 or $1,500. This evidence simply indicates that Mr. Smith had an exaggerated idea about the value of land around the town of Denham Springs.

From the repeated questions propounded to the witnesses who testified in this case as to the comparative value between the strip in dispute and the Felder sliver, it is apparent that defendants were relying for recovery largely on the fact that the highway commission had given $1,000 to Mr. Felder for a smaller tract and almost touching the one expropriated.

■ Obviously, the jury disregarded this amount paid by the commission to Mr. Felder and grounded its verdict on the evidence as a whole. It may be also that the jury relied "on their own opinion as well as on the testimony adduced before them," which they were authorized to do under the doctrine enunciated in the case of Louisiana Highway Commission v. J. B. Ferguson, 176 La. 642, 146 So. 319.

"They are supposed," says the court in that case, "to have some knowledge of the

matters submitted to them, and to some extent are regarded as experts."

The matters submitted to them in such cases evidently relate to the value of the land expropriated and the indemnity to be given the landowner for the damages suffered by him resulting from the expropriation.

The twelve members of this jury were, as stated by the court in that case, to some extent experts, and could rely on their opinion as well as on the testimony of the witnesses, in fixing the value of the land and the damages inflicted, if any. With such powers invested in a jury in expropriation suits, the court aptly said, in referring to a verdict in such cases, that it is "entitled to great respect and should not be interfered with, except in case of gross or manifest error."

Under the law the jury in discharging its functions exercised expert authority which taken in connection with the testimony given by plaintiff's witnesses must prevail over the evidence of Mr. Klein, real estate broker, and Mr. Smith, dealer in real estate, though experts in land values, as claimed by defendants, particularly as to Mr. Smith, who gave an inflated value, as before remarked, to the strip of land in question.

There is neither gross nor manifest error in the verdict of the jury and the judgment of the court approving that verdict, which is therefore affirmed.