**CLAIBORNE ELECTRIC COOPERATIVE, Inc.,**

v.

**LOUISIANA POWER & LIGHT COMPANY.**

Civ. A. No. 5886.

United States District Court
W. D. Louisiana,
Shreveport Division.

Oct. 4, 1957.

W. M. Shaw, Meadors, Shaw & Meadors, Homer, La., for plaintiff.

Thomas W. Leigh, Theus, Grisham, Davis & Leigh, Monroe, La., for defendant.

**BENJAMIN C. DAWKINS, Jr., Chief Judge.**

Presented here is a dispute between plaintiff, Claiborne Electric Cooperative, Inc., and defendant, Louisiana Power & Light Company, over the right to supply electricity to the industrial plant operated by McLaurin-Angier Company, a prospective electric customer, located on the outskirts of Homer, Louisiana. The suit originally was filed in the Second Judicial District Court for Claiborne Parish, Louisiana, on December 21, 1956. Thereafter, by timely proceedings, the case was removed here on grounds of diverse citizenship.

Plaintiff invokes certain provisions of a written contract, dated June 15, 1956, under which it purchases electric current from defendant. Article IX of that contract reads as follows:

"Electric power and energy delivered hereunder is purchased by the Customer for redistribution and resale solely to ultimate consumers located in the aforesaid areas. Contracts for sale by the Customer of any electric power and energy purchased hereunder shall provide that the purchaser shall not resell such electric power and energy.

"Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall distribute or furnish electric energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.

"Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall duplicate the other's facilities, except in so far as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines, but no

service shall be rendered from such inter-connecting facilities in competition with the other party."

Contending that defendant's preparations to supply electric service to Mc-Laurin-Angier constitute a violation, or threatened violation, by defendant of the quoted article of the contract, plaintiff obtained from the State Court, upon filing the suit and before its removal here, an *ex parte* temporary restraining order which prevented defendant from:

"further negotiating or contracting with McLaurin-Angier Co. for electrical services to its plant located immediately outside of Homer, Louisiana, and from actually supplying or furnishing said plant with electrical power or energy whether pursuant to a contract heretofore entered into between said Louisiana Power and Light Company and said McLaurin-Angier Co. or not";

and in this suit it also seeks a preliminary injunction, and eventually a permanent injunction, prohibiting the same acts.

Following removal of the case to this Court, a motion to dissolve the restraining order was filed by defendant, and, after hearing, it was continued in effect. Thereafter, successive orders were entered extending the restraint until February 7, 1957, when it inadvertently was permitted to expire. This was overlooked by all parties in interest until February 25, when, in open Court plaintiff's counsel agreed that the order not be further renewed. Consequently, that is no longer an issue in the case.

In due course, defendant filed its answer controverting plaintiff's allegations with respect to the asserted breach of contract by defendant. Trial was had on the merits, with a large volume of testimony having been taken. Most of this, it now has developed, is irrelevant to the issues presented.

While the trial was in progress, the Court learned that the electric rate proposed by plaintiff to McLaurin-Angier was higher than that proposed by defendant, and would result in a higher charge being imposed for electric service if plaintiff prevailed; that plaintiff's rates are not subject to control by any regulatory body; and that if plaintiff should be upheld in its contentions here, McLaurin-Angier would be left without any regulated source from which it could purchase electric current. Because of this, the Court felt that McLaurin-Angier should be made a party to this litigation, and, on its own motion, directed that it be enrolled as a party defendant. The attorney for this customer was present in Court, having been summoned as a witness by defendant; and on behalf of his client he accepted service of the Court's order without further formality.

Thereafter, this attorney filed with the Court a letter in which he advised that:

"the management of McLaurin-Angier Company had decided to abide by the findings of the Court, without filing formal pleadings or participating any further in the trial of this matter."

Following transcription of the testimony, and subsequent filing of briefs by both litigants, the case was submitted to the Court for decision on the merits.

A written ruling, with reasons, was entered on September 4, 1957, denying plaintiff the injunctive relief it seeks. The matter is now before the Court to settle its detailed Findings of Fact and Conclusions of Law, which are hereby made and entered, as follows:

### Findings of Fact.

#### 1.

Plaintiff is a rural electric cooperative organized and existing under the State and Federal statutes relating to such corporations. Defendant is a private utility corporation organized under the laws of the State of Florida legally qualified to do and doing business in the State of Louisiana with a large steam electric generating plant situated on the Ouachita River near Sterlington, Louisiana.

#### 2.

Plaintiff and defendant both maintain and operate electric distribution systems

in the Parish of Claiborne, Louisiana, and in the vicinity of the Town of Homer (See Defendant's Exhibit 1), which systems are completely independent one of the other and have been in operation for many years.

### 3.

Plaintiff does not operate any plant for the generation of electricity but purchases its electric current from defendant by means of a contract (Plaintiff's Exhibit 1 and Defendant's Exhibit 27), dated June 15, 1956. This contract is somewhat lengthy but the only provisions thereof that are pertinent to this litigation are contained in Article IX, quoted above.

### 4.

The Town of Homer, Louisiana, also maintains and operates an electric generating plant within its corporate limits which supplies electricity to residents of the municipality as well as to certain customers outside the corporate limits of the Town. This plant has been so operated for many years, and formerly constituted another source of electric current in the territory to which this litigation relates. (See Defendant's Exhibit 1.)

### 5.

On and prior to September 4, 1956, the Town of Homer was supplying electric current to McLaurin-Angier, hereafter called Customer, whose plant had been constructed some years before on a tract of land comprising Site No. 1 of the Homer Development Company Subdivision. Customer also later acquired Industrial Site No. 2 which adjoins Site No. 1. (See plat attached to Plaintiff's Supporting Affidavit No. 1 and Instruments A and B attached to Plaintiff's Supporting Affidavit No. 3.)

### 6.

Current for Customer's plant was being supplied from the Town's generating plant by means of an electric line extending from a point within the corporate limits of the town to a point opposite the north end of Customer's plant (See Defendant's Exhibit 1), where a bank of transformers had been installed (See plat attached to Defendant's Supporting Affidavit No. 1) for the purpose of reducing the voltage from 2,300 volts to the lower voltage required to operate the plant.

### 7.

In the summer of 1956, Customer, in order to meet its expanding need for power, desired to assure itself of a larger and more stable supply of electricity. Following discussions between representatives of Customer and representatives of the Town of Homer, the Town Council concluded that its electric generating capacity was not sufficient to insure its being able to meet this Customer's requirements; and determined not to renew its existing arrangements with this Customer beyond January 1, 1957.

### 8.

Pursuant to this decision, the Town Council, on September 4, 1956, adopted two resolutions (Defendant's Exhibits 21 and 22) in which it 1) announced its decision not to renew the electric contract with Customer after January 1, 1957, and 2) placed a value of $9,240 upon the special electrical equipment which had theretofore been installed by it to serve Customer. It also requested Customer, in its negotiations with other power companies, to include arrangements for this equipment to be purchased at that price from the Town by the company to whom Customer's contract for future electric needs might be awarded.

### 9.

Customer's representatives were notified of the Council's decision and of the actions which it had taken. Thereafter both plaintiff and defendant were requested by Customer to submit proposals for supplying electricity to meet its requirements. Each of the competing companies was made aware that competitive bids were being invited.

### 10.

Plaintiff's proposal (Plaintiff's Exhibit 17) was submitted to Customer's attorney on or about September 13, 1956, and defendant's proposal (Defendant's Ex-

hibit 26) was submitted to him on or about October 2, 1956; following which both proposals were forwarded to Customer's home office in Massachusetts for further consideration. They were held under consideration by Customer until about December 2 or 3, 1956. During the latter part of November, 1956, while both proposals were being considered, plaintiff was allowed to submit a supplemental proposal, which was sent to the Customer on November 28, 1956, and which also was given due consideration by Customer before it reached a final decision with respect to its awarding the contract.

### 11.

Meantime, on November 2, 1956 (See Plaintiff's Supporting Affidavit No. 4), plaintiff entered into an agreement to provide electric service to the plant of Pelican Plastics Company which was being constructed on Industrial Site No. 3 of the Homer Development Company, Inc. Thereafter, during the month of November, plaintiff constructed an additional electric line originating at a point on its existing lines more than a mile south of Pelican Plastics Company. This new line extended in a northerly direction to a point opposite this company's plant (See Defendant's Exhibit 1 and plat attached to Plaintiff's Supporting Affidavit No. 1).

### 12.

Following completion of plaintiff's new line to the Pelican Plastics plant, plaintiff extended it in a northerly direction to a dead-end at a point opposite Customer's plant (See plat attached to Plaintiff's Supporting Affidavit No. 1). There is some dispute as to when this last line was constructed, but the evidence as a whole preponderates in favor of the conclusion that it was not completed until some time between November 17 and November 22, 1956. The Court so finds.

### 13.

The pole at which this line dead-ends opposite Customer's plant is located at a distance of 1,074 feet in a northerly direction from the point where electric service was being rendered to Pelican

Plastics; 69 feet from the west line of the tract on which Customer's plant is situated; 278 feet from the northwest corner of Customer's plant, and 375 feet from the bank of transformers into which the Town of Homer was supplying electric service to Customer (See plat attached to Defendant's Supporting Affidavit No. 1). No electric service is furnished from any portion of this new line north of the point from which electric service is provided to Pelican Plastics, and plaintiff has established no present need for the line beyond that point.

### 14.

Following completion of the extension of plaintiff's line to the dead-end point opposite Customer's plant, plaintiff sent defendant a registered mail letter, dated November 24, 1956 (Plaintiff's Exhibit 24 and Defendant's Exhibit 43) in which it complained that defendant's negotiations with Customer for supplying electric service to the plant constituted a violation by defendant of Article IX of the electric service agreement existing between plaintiff and defendant. It thereby registered its formal protest against any further attempt by defendant to provide electric service to Customer.

### 15.

On or about December 2 or 3, 1956, Customer, for whose business plaintiff and defendant were competing, decided to award to defendant a contract for electric service on the terms of defendant's proposal of October 2, 1956, which was accepted and executed by one of its authorized officers and forwarded to its representative in Homer for transmittal to defendant. It was delivered to defendant on or about December 6, 1956. This proposal contained an agreement by defendant to purchase from the Town of Homer, for the sum of $9,240, that portion of the Town's electric facilities being used to provide service to Customer.

### 16.

After receiving the executed contract, defendant initiated steps to consummate purchase of the Town's facilities. It also

commenced construction of an additional electric line, to extend from its existing lines in a general northwesterly direction a distance of 1.38 miles to a connection with that portion of the Town's facilities which defendant had agreed to purchase. Construction of this new line was in progress when this suit was filed on December 21, 1956. The line was completed a few days later, but, in obedience to the temporary restraining order, no attempt was made to complete defendant's acquisition of the Town's facilities, or to complete the electric connection between defendant's line and these facilities, so as to substitute defendant's electric service for that of the Town. The *status quo*, insofar as actual electric service to Customer was concerned, was maintained; and at the time of the trial, the Town was continuing to provide Customer with electric service.

### Conclusions of Law.

**1.**

The Court has jurisdiction of the parties and the subject matter. 28 U.S.C.A. § 1441.

**2.**

Article IX of the contract between plaintiff and defendant is the only provision thereof which is at issue in this litigation.

**3.**

The first paragraph of this Article, as quoted in the Statement of the Case, supra, is inapplicable to the facts here presented.

**4.**

■ The provisions of the second paragraph of this Article have not been violated by defendant because:

a) Plaintiff's facilities in proximity to Customer's premises were constructed only after both parties knowingly had begun competing for Customer's business, neither litigant having theretofore operated in the Homer Development area.

b) The mere fact that plaintiff succeeded in constructing a new electric line into the Homer Development area at a time when both parties were competing for Customer's service contract, and thereby "won the race" to get its lines there first, does not constitute this line as "existing facilities" of plaintiff within the intendment of this paragraph.

c) Customer cannot be served with electricity by plaintiff, even from its newly constructed line "without extension of its distribution system other than by the construction of lines not exceeding 300 feet in length".

**5.**

■ The provisions of the third paragraph of this Article have not been violated by defendant because:

a) For the reasons set out above, plaintiff cannot urge that defendant's facilities "duplicate" any of plaintiff's facilities which were in existence when both parties began competing for Customer's contract, before plaintiff had "won the race" to get its lines into the area.

b) Defendant's new line, constructed in order to connect with the Town's lines that are presently serving Customer's plant, does not take off from a "duplicating facility" within the intendment of this paragraph.

**6.**

■ If the injunction plaintiff prays for should be granted, an unnecessary, unregulated monopoly for plaintiff would be created. This would require Customer to pay a higher rate for electricity than that which it enjoys under its present contract with defendant and, in fact, would enable plaintiff to charge Customer any rate it might arbitrarily fix, thereby placing Customer's plant completely at plaintiff's mercy. Such a result should not be permitted by a Court of equity.

**7.**

Accordingly, for all of the reasons set forth, plaintiff is not entitled to the injunctive relief it is seeking, and its demands must be rejected.

Proper decree may be presented.