HERGET, Judge.
This matter is before us on a devolutive appeal filed by Plaintiff-Appellant, Louisiana Power and Light Company, from that portion of the judgment of the Twenty-First Judicial District Court fixing the amount of the award to Defendants, landowners in an expropriation suit filed by it.
Early in 1959 Appellant Company concluded it was necessary to construct a transmission line from its substation two miles west of Hammond, Louisiana across country to their substation site approximately one mile west of Ponchatoula, Louisiana. The entire -right-of-way sought is one approximately six miles long and one hundred feet wide so as to allow fifty feet clearance on either side of the line. Rights-of-way were obtained from other property owners along the route. Defendants, however, refused to amicably grant a right-of-way over their property and, in consequence, Plaintiff Company filed an expropriation proceeding.
The Defendants, L. Barbee Ponder and Leonard K. Kinchen, own in indivisión a tract of land in the Parish of Tangipahoa containing some 65 acres, which land is in a rural area and is used for the purpose of growing pine timber. There is a gravel road on the northern property line and a canal known as the “Yellow Water River” which runs diagonally some feet from the extreme northeast corner of the property. The right-of-way sought from Defendants, although one hundred feet in width, crosses the land of Defendants in such a way it penetrates into Defendants’ property only fifty feet. This right-of-way actually cuts off a triangle, as shown in exhibit P-1 which is a survey of the property involved and is described in the Proces Verbal thereon as follows:
“Begin at the northwest corner of Sec. 49 & run east along the boundary between Secs. 45 & 49 2545.96' to the point of beginning;
Thence continue east 72.26'; thence turn 90°0' right & run 69.26'; thence turn 133 °47' right & run 100.09' to the point of beginning. All in Lot 3 in Sec. 49 T.7S R. 7E Greensburg Dist., La. & containing 0.057 Acre.”
In the contact made by the Company’s right-of-way man with Defendants prior to the institution of suit, the evidence reveals the offer made to Defendants for the right-of-way was $20 and Defendants refused to give serious consideration to such offer.
In their answer to the suit — first questioning the necessity of the Company expropriating their property by the filing of an exception of no cause or right of action — Defendants contended in the event the taking was permitted they were entitled to $11,000 itemized as $1,000 for the value of the land; $5,000 loss of aesthetic beauty and $5,000 damages by reason of the menace to trees caused by electrical lines and interference with logging operations. Defendants further maintained in their answer the property in question is valuable and has been conserved by them as a model tree farm.
In this Court Defendants answered the appeal and seek judgment herein increasing the award of $542.75 fixed by the Trial Court. Also in this Court Defendants have filed what they label as a “Supplemental & Additional Exception of No Right of or Cause of Action” to Plaintiff’s petition on the grounds the certificate of the Clerk of Court shows no deposit was made in the Registry of the Court by Plaintiff for reasonable damages and the value of the expropriated property either at the beginning of this proceeding or at *3 the rendition of judgment and such tender and deposit are necessary conditions precedent to the expropriation of such property according to LSA-R.S. 19:12, which provides :
“If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner.”
And LSA-R.S. 19:13, which provides:
“Appeals from the judgment of the lower court, made by either party, do not suspend the execution of that judgment. The payment of the amount adjudged to the owner, or the deposit thereof in the registery of the court, entitles the corporation to the property described in the petition in the same manner as would a voluntary conveyance. If any change is made by the final decree, the person expropriating shall pay the additional assessment or recover back the surplus paid.”
We are unable to agree with Defendants’ contention in this respect inasmuch as the failure to make such deposit as contemplated by these articles does not deny to the plaintiff the right to expropriate but the penalty resulting therefrom is that the plaintiff in such instances must pay the costs of the proceeding and in this case the judgment of the Trial Court so decreed.
We further call attention to LSA-Civil Code Article 2638, which provides:
“If a tender be made by any corporation of the true value of the land to the owner thereof, before proceeding to a forced expropriation, the costs of such proceedings shall be paid by the owner.”
Therefore, the Trial Court properly rejected the exceptions of no right or cause of action filed therein and the exceptions of no right or cause of action filed in this Court are likewise overruled.
The Trial Court gave no written reasons for its judgment. However, the minutes of May 23, 1960 reflect:
“ * * * This day the court rendered judgment herein, granting to the plaintiff the servitude or right of way conditioned on defendant paying to the defendants the sum of $42.75 per acre for the land plus $500.00 or a total of $542.72 All attorneys to be notified.”
In the written judgment which was signed on June 30, 1960 the two items were not separated but the total sum of $542.75 was fixed as “ * * * the fair value of the right-of-way herein granted to the plaintiff, including any damages to said parcel as a result of the granting of said right-of-way, and the use thereof by Louisiana Power & Light Company.”
In determining whether or not the expropriation was necessary we are impressed with the testimony of Mr. Morris Steiner, Jr., a division engineer employed by Plaintiff Company, who testified the reason for the need of the line is to provide additional power in the Ponchatoula area and that the present facilities have reached maximum capacity and the additional line is necessary for the purpose of supplying the needed power. In response to the question as to whether or not • in his opinion the line is necessary in the immediate future, his answer was very definitely such a necessity exists.
In addition, Defendants contended alternatively it was unnecessary for Plaintiff to have chosen a route across their property and another or a different route may have been utilized. From our examination of the record there is no showing the route selected by Plaintiff is not one which will best serve the purposes for which the right-of-way is to be obtained and we find nothing in the evidence to show their action in routing same across the tip of Defendants’ land is in any way arbitrary or capricious.
The next issue we are confronted with is the valuation of the property expro *4 priated. In this connection Plaintiff produced as a witness Mr. Max J. Derbes, Jr., who made a detailed evaluation of Defendants’ land by using- comparables and determined the land to have a value of $130 per acre. It was his opinion the highest and best use of the land in question is for the growing of timber and, as Defendants would be deprived of the right to grow timber thereon subsequent to the expropriation, he concluded the taking would result in a loss to Defendants of 80% use of the land so taken. It having been determined the acreage involved is fifty-seven thousandths (.057) of an acre, this multiplied by $130 the value placed upon the acreage, by 80%, equals $6 — it was his opinion that such an amount represented the true market value of the right-of-way taken and Defendants would be entitled, in addition, to the value of the merchantable timber on the land.
Defendants maintain this valuation is far less than that to which they are entitled and during the course of the trial offered evidence to the effect the erection of this power line would materially destroy the potential value of their land which they asserted was suitable for subdivision purposes. Counsel for Plaintiff objected to such evidence as going beyond the pleadings inasmuch as in the answer the Defendants had alleged the land was a model tree farm.
In a review of the testimony offered on the trial of the case we find little to justify even a remote possibility this land was to be subdivided and all the witnesses without equivocation testified the best and most profitable use of the land presently is for growing timber. The courts give consideration to the most profitable use to which land can be put by reason of its location, topography and adaptability in arriving at the market value. City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445; Louisville & N. Railroad Co. v. R. E. E. De Montluzin Company, 166 La. 211, 116 So. 854.
In maintenance of their claim Defendants offered the testimony of Mr. Clarence P. Murphy who, it was shown, is in the real estate business and is an officer of one of the banks in the area. He appraised the property for subdivision purposes as having a value when divided into fifty foot lots of from $1,000 to $1,500 each. However, because of the improper drainage and the topography of the land it was his opinion the only available lot which would be useful at the present time is the property taken. As a comparable Mr. Murphy referred to a sale in 1959 of 4.92 acres for a total sale price of $2,582. Even because of the locations alone of the respective properties there is quite a distinction in the value of these properties. The sale which he used as a comparable is located on a hard-surfaced road, the Hammond-Baton Rouge Highway, whereas the subject property is on a dirt road in a rural area.
The value of the merchantable timber on the subject property was appraised by a Mr. Brashears as being $10 for two cords of pulpwood. However, he admitted that he would not sell his for that price.
One of the Defendants, Mr. Kinchen, while on examination said there were seventeen trees suitable for poles or small piling that would have a stumpage value of $2 each. Therefore, we are fixing the value of the trees taken at $34. Mr. Kin-chen was of the opinion that $11,000 would be a fair award to the Defendants for the taking of the land, although he was not desirous of selling it to Plaintiff even for that amount. We point out that using .057 of an acre as the area taken, the sum of $11,000 would amount to a valuation of this property at $192,982.46 per acre. Mr. Kinchen testified Defendants bought the land for a little more than $100 an acre.
As heretofore noted, we are not apprised of the reasons of the Trail Court in arriving at its figure of $542.75, though from a reading of the minutes referred to where *5 in the two items were separated — one for $42.75 and the other for $500' — it would appear the Court arrived at a base value of $750 for this land, $42.75 of which would represent the value of .057 of an acre and $500 would represent other damages. There was testimony that some $800 had been expended by Defendants in clearing the land and as heretofore stated Mr. Kinchen testified Defendants purchased the land for some $100 per acre about ten years ago. We are cognizant of the fact that the value of this land has increased since its date of purchase but we are of the opinion the valuation of $750 per acre for this land is without satisfactory basis. Even giving consideration to the sale of the 4.92 acre tract which represents $524.80 per acre for land on a hard-surfaced highway it is evident that a valuation of $750 per acre for this land is excessive.
In arriving at the value to which a landowner is entitled when his property is expropriated, the Court is called upon to determine that nebulous value which is the price a willing purchaser would pay to a willing seller. In the light of all the testimony adduced on the trial of this case, we have concluded to fix the value of the land expropriated at $250 per acre.
Even though this expropriation represents a right-of-way only and not a fee simple title, we think it only fair, inasmuch as the land will be denuded of all timber and which is the best purpose for which same can be used, that Defendants be compensated on the basis of a hundred per cent taking, especially so in the light of giving consideration to the use to which such small area could be put by the landowners. Accordingly .057 of an acre of land valued at $250 per acre amounts to $14.25 as the value of the property taken.
We next give consideration to the question of damages caused to the remaining portion after the taking. It is difficult for us to find in any way the remaining land of Defendants when used for timber purposes will be impaired by the right-of-way. Defendants maintain that additional hazards would be involved in logging operations and the presence of the power line adds a fire hazard and further that the operation of electrical appliances and television sets would be affected by the presence of the power line. Plaintiff’s engineers maintain there is no additional hazard to logging operations and there was testimony to the effect that in truth the presence of the right-of-way might serve as a stopgap in the event of a fire occurring in the timbered area. Furthermore, we are of the opinion the claims asserted here have no relationship to this expropriation as the same conditions could prevail if the power line did not actually cross the property of Defendants but was located on adjacent land.
We are, as stated, unaware of the reasons of the Trial Court for the fixing of the values awarded by it and therefore are not in a position to know the basis therefor — and while it is true in expropriation proceedings awards of the trial court will not be disturbed unless same are manifestly erroneous — but we do not feel the evidence in this case supports the valuation placed on this property by the Trial Court for damages and, for the reason we believe no serious injury results to the remainder of Defendants’ property, we will fix an amount of $25 for severance damages.
Therefore, for these reasons, judgment is rendered overruling the exceptions of no right or cause of action filed in this Court and the judgment of the Lower Court is amended by awarding Defendants judgment, jointly, in the sum of $14.25 for the value of the right-of-way taken; $34 for the value of the standing timber and $25 for severance damage, or a total of $73.25. In all other respects the judgment of the Lower Court is affirmed. It is further ordered that Plaintiff-Appellant pay all cost of this appeal.
Judgment as amended affirmed and rendered.