149 So.2d 615 (1963)
UNITED GAS PIPE LINE COMPANY, Plaintiff-Appellant,
v.
Albertine Benoit BLANCHARD, Defendant-Appellees.
No. 5844.
Court of Appeal of Louisiana, First Circuit.
January 18, 1963.
Rehearing Denied February 22, 1963.
Certiorari Refused March 15, 1963.
Hargrove, Guyton & Van Hook, by John T. Guyton, Shreveport, for appellant.
Lofaso & Bourg, by G. F. Lofaso, Houma, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
REID, Judge.
These proceedings consolidated for trial are expropriation suits brought by United Gas Pipe Line Company, a public utility, under the provisions of LSA-R.S. 19 et seq., seeking to expropriate a thirty foot servitude across the respective lands of the defendants for the construction of a two inch pipe line for the transportation of natural gas. Plaintiff alleges the construction of the pipe line is necessary in order to serve and meet the public demands for natural gas and the Company should be allowed to acquire by expropriation a right of way and servitude. Defendants contend residents of the area near the proposed two inch pipe line are presently being served by another natural gas company and that it is not necessary to expropriate property for *616 the purpose of supplying the public with natural gas when the public is already being served by another company. Defendants argue further the expropriation proceedings were instituted solely for the purpose of supplying a private corporation or corporations with natural gas, which corporation or corporations are presently being served by another gas company. Alternatively, the defendants allege the price offered by plaintiff to the defendants is inadequate to compensate them for the taking of their property and that the location of the proposed pipe line would do less damage to defendants' property if placed immediately south of the southern right of way line granted to the Terrebonne Parish Police Jury for the construction, operation and maintenance of the Houma Navigation Canal.
The Trial Court for written reasons rendered judgment in each suit on August 17, 1962 in favor of defendants and against United Gas Pipe Line Company, dismissing the demands of said United Gas Pipe Line Company at its cost.
It is from these judgments that plaintiff has appealed. The Trial Court held plaintiff had not discharged its burden of proof of public demand, necessity, use, or purpose, thus failing to show the construction of the said pipe line was necessary in order to serve and meet the public demand for natural gas.
The plaintiff, in this appeal, set forth two allegations of error committed by the District Court, namely:
"(1) The district court erred in finding that appellant had failed to sustain the burden of proving that the right of way and servitude sought to be expropriated is to be used for a public purpose or a purpose of public utility; and
"(2) The district court erred in failing to award to appellant the right of way and servitude sought to be expropriated upon payment to appellee by appellant of the fair and reasonable price thereof."
It is well settled in Louisiana by Constitutional provision and by judicial determination that before property can be expropriated it must be established the property is being taken for public purpose or use.
The Supreme Court of Louisiana in Calcasieu & S. Ry. Co. v. Bel et al., 224 La. 269, 69 So.2d 40, said:
"Under Article 1, Section 2, of our Constitution, no person shall be deprived of life, liberty, or property except by due process of law, and except as otherwise provided in the Constitution private property shall not be taken or damaged except for public purpose and after just and adequate compensation is paid. Further, in Article 4, Section 15, it is provided that vested rights shall not be divested unless for purposes of public utility and for just and adequate compensation previously paid.
"By virtue of these constitutional provisions, the plaintiff corporation, although one which may exercise the right of eminent domain under the Code article, does not have the absolute right of eminent domain. Plaintiff could not expropriate private property under the authority of the Code article without regard to the purpose involved, for this would be giving to the article an unconstitutional application. For a constitutional application of the article, the taking of the property by the plaintiff must be for a public purpose and utility as provided in the Constitution.
"Accordingly the issue to be determined is whether the property which plaintiff seeks to expropriate is being taken for a public purpose or for purposes of public utility." (Emphasis supplied)
The determination of the question in expropriation cases as to whether taking is for public purpose or use is strictly a judicial function and the determination of the question is the duty of the courts.
*617 The Supreme Court also said in the Calcasieu case:
"It is the duty of the court in this case, as in all expropriation cases where the question of public use is at issue, to decide on the facts presented whether the taking is for a public purpose or use. The determination of this question is strictly a judicial function, and what was said by this court in River & Rail Terminals, Inc., v. Louisiana Ry. & Nav. Co., 171 La. 223, 130 So. 337, 339 is pertinent here:
"`The Louisiana Public Service Commission is a public board, and not a part of the established judiciary system of the state. It is not a court, in any proper sense of that term. The power of eminent domain is not conferred upon the Commission, and it is powerless * * * to take away from the courts of this state their exclusive right to pass upon the question as to what constitutes public utility and public purpose in matters of expropriation.'"
See also Gulf States Utilities Co. v. Callahan, La.App., 65 So.2d 608.
Expropriation laws are "special and exceptional in character," in derogation of common rights, and as such must be strictly construed. State through Department of Highways v. Bradford, 242 La. 1095, 141 So.2d 378. See also, Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93, 95; Louisiana Highway Commission v. Cormier, 13 La.App. 459, 128 So. 56; Heppe v. State, 162 Neb. 403, 76 N.W.2d 255; 1 Lewis on Eminent Domain, Sec. 388 (3d ed.); 29 C.J.S. Eminent Domain § 22; 50 Am.Jr., Statutes, § 400.
The burden of establishing proof of the necessity of the taking is on the party seeking to expropriate said property. See Louisiana Ry. & Nav. Co. v. Xavier Realty, Limited, 115 La. 328, 39 So. 1, and United Gas Pipe Line v. Nezat, La.App., 136 So.2d 76.
The evidence shows that the particular pipe line in question was a two inch pipe line which would run approximately two miles in length from a presently existing six inch pipe line of United Gas Pipe Line Company and would be used to fulfill a contractual agreement entered into between the plaintiff and the Quinn Manhadden Fisheries, Inc., located approximately 5600 feet from the location of the present six inch pipe, and would then continue an additional 4500 feet to a plant owned by the Fish Meal & Oil Company, Inc., which also, purportedly, had a contract with the plaintiff. The facts disclose that the area in question was already being served by South Coast Gas Corporation which purchased its gas from plaintiff corporation; and the proposed line would only serve two customers, one of which, the Quinn Manhadden Fisheries, Inc., was already being temporarily served by South Coast Gas Corporation at the request of the plaintiff corporation. The evidence further shows South Coast Gas Corporation is able and willing to serve the two companies who would be served by the proposed line.
The sole evidence introduced by the plaintiff relative to the question of public necessity was the testimony of Mr. H. C. Hollingshead, the General Superintendent of Pipe Lines for United Gas, who testified as follows:
"A: * * * The purpose of this line is to fulfill the requirements of these two plants need for natural gas as contracted for by our sales department, gas sales department.
"Q: Now, will gas be available along the route of this line for any other purpose?
"A: Gas will be available along the the route of this line through the proper contacts and connections for use up to the capacity *618 of the line at which time we will take further action.
"Q: You say for use. Use by whom?
"A: Use by the public."
He further testified:
"Q: Exactly where will this line be going? To serve whom?
"A: It's going to serve two customers.
"Q: What are the names of those customers?
"A: First the line will pass the Quinn Manhadden Fisheries, Inc. Then the line will proceed to Fish Meal & Oil Company and will terminate at that point.
"Q: Do you know whether or not Mr. Quinn's fish meal plant is presently being served by another natural gas company?
"A: Yes, I know that there has been an interim agreement whereby some portion of his requirements are temporarily being served.
"Q: At the present time, however, Mr. Quinn's plant is being served with natural gas?
"A: A portion. I don't know what it is. I understand there is some gas available to Mr. Quinn's fisheries on a temporary basis.
"Q: Then from Mr. Quinn's plant you plan to go 4500 feet to another fish meal plant?
"A: Correct.
"Q: What is the name of that fish meal plant?
"A: According to my record here which is an operating record we call it Fish Meal & Oil Company, Inc.
"Q: Other than serving Mr. Quinn and the Fish Meal Company who will be served at the present time?
"A: At the present time?
"Q: Yes sir.
"A: To my knowledge no one unless we have had some inquiries from others through there in that area that I am not familiar with to my knowledge.
"Q: And Mr. Quinn is presently being served?
"A: Through another source a portion of his requirements on a temporary basis."
It is clear from Mr. Hollingshead's testimony that the sole use of the line at the present time would be to serve two customers, one of which is already being served by another company under "an interim agreement", and the other of which could be served by the same company. Neither the "contracts" nor the "interim agreement" was supplied by the plaintiff. Plaintiff neither introduced a certificate of public necessity from the Federal Power Commission nor from the Louisiana Public Service Commission, nor did plaintiff produce any witnesses from the two plants in question to testify as to the needs of the plants or as to the liability of the existing pipe line to provide service.
The availability of gas service in the area is shown by the testimony of Mr. H. J. Friloux, President of South Coast Gas Corporation. He testified, upon being shown the map introduced in evidence by plaintiff to show the proposed gas line, that his company is presently serving gas in the same area, both to domestic users, and to one dehydration plant (the Quinn plant) under a temporary agreement, and that his company has been serving the people in the area with natural gas for five years and was ready and willing to serve both of the plants which would be served by the proposed line. The record clearly shows the South Coast Gas Corporation was able and willing to serve both plants involved herein.
*619 Mr. Max Derbes, plaintiff's expert appraiser, testified that he could not say that the area involved was becoming industrialized because the Navigation Canal was newly constructed, and it was too early to speculate as to the future industrial growth of the area because of the canal.
The map introduced in evidence by plaintiff shows the proposed gas line passes the outskirts of an area where the consumers are presently being served by the South Coast Gas Corporation.
The plaintiff contends the District Court's holding that the plaintiff had not discharged its burden of proof of public demand, necessity, use, or purpose, was clearly contrary to the established jurisprudence and cites many cases in support of its position, the more important of which were analyzed by the Trial Judge in his reasons for judgment.
The primary case relied upon by the plaintiff was Calcasieu & S. Ry. Co. v. Bel et al., supra, and its companion case Calcasieu & So. Ry. Co. v. Kinder Canal Co., La.App., 69 So.2d 537.
In the Bel case, the plaintiff sought to expropriate a right of way across defendant's land for the construction of a railroad which would run from the trunk line of another railroad to a privately owned sand and gravel company. The sand and gravel company owned all the stock of the railroad. The defendant contended the purpose for which the property was sought was purely a private one because the railroad would merely benefit a private enterprise, the sand and gravel company. However, the Court held that upon completion of the railroad its facilities would serve the public generally and that it was established by the plaintiff that a lumber company, owner of large tracts of land situated in the vicinity of the railroad line, and purchaser of forest products, would and could make use of the facilities of the railroad.
In the Kinder case the same defense was made, together with the additional defense that there was already an existing railroad owned by the Parish Line Railroad Company leading to approximately the same point the petitioner in the case would serve. The Court held plaintiff had established the facilities of the said Parish Line Railroad Company were not such as to enable it to haul heavy cars of sand and gravel because of its construction, and again, as in the Bel case, the Court held that other shippers could use the road. It is interesting to note in the instant case no evidence was introduced by the plaintiff which would show that the existing gas line could not satisfactorily serve the area in question.
After discussing the Bel and Kinder cases, the Trial Judge concluded:
"It appears to us that the cases cited show that there are two requirements for expropriation: (1) that there must be a right to expropriate, and (2) the taking must be for a public purpose. And in each of the cases not only was it found that there was a right of expropriation, but there was a finding of fact that the expropriation was for a public purpose. In some instances there was a `prima facie showing of necessity, unassailed by the defendant', and in others the finding of fact was made after a contradictory hearing. In each case the burden of proof rested upon plaintiff to establish public necessity.
"It is our opinion that in the instant case the plaintiff has not discharged its burden of proof of public demand, necessity, use or purpose and, therefore, does not come within the purview of the Calcasieu & S. Ry. Co. v. Bel, supra, and other cases, wherein those facts were established."
Plaintiff also relied upon Gulf States Utilities Co. v. Callahan, La.App., 65 So.2d 608, but in the Gulf States case the evidence clearly showed the testimony introduced by the plaintiff's engineer not only showed that the line would serve the pumping station of Texas Pipe Line Company but that the *620 power to be delivered to the station would be available at once to the whole area surrounding the station, as well as along the line between Abbeville and the town of New Iberia. It was shown that the line would run from plaintiff's Abbeville substation to the New Iberia substation. The Court held that the evidence showed the necessity for the immediate serving of the Texas Pipe Line Company and of an area some 20 miles in length.
In Louisiana Power & Light Co. v. Ponder, La.App., 127 So.2d 1, cited by plaintiff, the evidence was clear that an electric line was needed to provide additional power in the Ponchatoula area as the present facilities had reached maximum power.
In United Gas Pipe Line v. Nezat, La. App., 136 So.2d 76, the evidence in regard to the question of necessity showed that the gas to be transported in the pipe line would be sold directly to consumers and indirectly to wholesalers for resale to consumers on and along the pipe line, including some 75 cities, power plants, pipe lines and a chemical corporation. The testimony in that case was certainly a great deal stronger than in the case at issue herein, for in the present cases it was merely stated that the purpose of the line was for public use without clarifying or elaborating upon what the use was, and without in any way showing there would be any other use for the line than to serve the two plants. It should be pointed out that the plaintiff asserts that the Nezat case establishes its authority to expropriate needed property. The Trial Court, however, held that the holding in the Nezat case was not based upon a general rule that the plaintiff had a right to expropriate but rather upon its finding of fact of public necessity and purpose.
In Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518, the Court held that the uncontradicted testimony showed the track would not be restricted to the use of any single industrial plant as there were presently operating in the area three industrial plants which were served by the tracks and, in the past, other plants formerly located in the area had used the tracks in question.
In all of the cases cited by the plaintiff there was a judicial determination made by the Court that the plaintiffs had shown a public necessity for expropriation and the plaintiffs had been able to show by preponderance of the evidence that there was a public use and purpose involved, and all the cited cases contained substantial evidence as to this necessity rather than a mere statement of a general manager that gas would be available for use by the public.
In Texas Eastern Transmission Corp. v. Bowman, 238 La. 399, 115 So.2d 797, the Court was influenced by the fact that the Federal Power Commission, after a three day hearing, had ordered a certificate of public convenience and necessity to the plaintiff in connection with the proposed pipe line.
In the present case the plaintiff made no attempt to introduce a certificate of public necessity by the Federal Power Commission or the Louisiana Public Service Commission.
As mentioned above, the Trial Court, after examining the evidence introduced, did not feel the plaintiff had brought this case under the rule of the cases cited by plaintiff, nor had it met the constitutional and judicial test of a showing of public necessity, although the Trial Court did not in detail spell out the factual consideration which influenced it. The plaintiff introduced no evidence whatsoever other than the vague and indefinite testimony of Mr. Hollingshead that the area was presently adequately being served by a gas company which was willing and able to serve the two plants in question. The plaintiff did not introduce the contracts it alleged it had with the two plants and in fact produced no evidence other than the testimony of Mr. Hollingshead that a contract had been entered into with Fish Meal & Oil Company. *621 No witnesses were produced from the two companies to show the needs or the contracts. No evidence was introduced to show the Fish Meal & Oil Company had requested the gas service or would use it. Taking all of these facts into consideration the Trial Judge concluded that the plaintiff had failed to bear the burden of proving the public necessity.
It should be emphasized that the Trial Judge did not hold that the mere fact there was another pipe line in the area would show no public necessity in itself. The holding of the Trial Judge is clearly one of a factual determination of the issues presented in this case only, and in view of the evidence it is the opinion of this Court that the Trial Judge correctly analyzed the situation and his determination that the plaintiff has failed to show a public purpose or necessity in this case is in line with the jurisprudence.
For the foregoing reasons the opinion of the Trial Judge is hereby affirmed.
Affirmed.