165 So.2d 614 (1964)
LOUISIANA POWER AND LIGHT COMPANY
v.
Mrs. Nellie M. CHARPENTIER.
No. 6134.
Court of Appeal of Louisiana, First Circuit.
June 1, 1964.
Rehearing Denied July 1, 1964.
Duval, Arceneaux & Lewis, by George Arceneaux, Jr., Houma, for appellant.
*615 Watkins & Talbot, Houma, Donald L. Peltier, Thibodaux, and Monroe & Lemann, by Andrew P. Carter, New Orleans, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
REID, Judge.
This case is one of five brought by the Louisiana Power and Light Company against land owners in Terrebonne Parish for a 30 foot right of way across their lands for the construction, erection, maintenance and operation of electric power transmission lines. The land owners are Mrs. Nellie M. Charpentier, defendant herein and Paul A. Charpentier, James S. Antill, Earl Antill, and Kenneth Barrilleaux.
The suits were defended on two grounds: lack of necessity and quantum. The suits were consolidated for trial in the District Court. After a hearing and argument in briefs the District Court rendered and signed judgment in all five cases, holding that necessity had been proven and ordering payment to Mrs. Nellie M. Charpentier of $21.00; Paul A. Charpentier of $67.50; James S. Antill of $426.20; Earl A. Antill of $4.65; and Kenneth Barrilleaux of $5.74. The defendants have appealed herein from these judgments.
This Court, on motion, consolidated all five cases on appeal for purposes of hearing and determination, except for purposes of quantum to be awarded in each, with separate judgments to be rendered in each of said suits.
Subsequent to the filing of the appeal in this Court, South Louisiana Electric Cooperative Association filed an intervention opposing the plaintiff's claim and espousing the cause of the defendant on the grounds that the subject matter, particularly the question whether there is adequate electric service already available by another utility, is exclusively under the jurisdiction of the Louisiana Public Service Commission and further alleging that said suit had been filed in intervener's behalf against the plaintiff before the Louisiana Public Service Commission, Docket 9200, seeking to enjoin it from constructing facilities in the area involved in this suit. Intervenor cites several cases decided by this Court, namely, Pointe Coupee Electric Membership Corporation v. Central Louisiana Electric Company, La.App., 140 So.2d 683; South Louisiana Electric Cooperative Association v. Central Louisiana Electric Company, La. App., 140 So.2d 687; Pointe Coupee Electric Membership Cooperation v. Bueche et al., No. 6110 on the Docket of this Court; and South Louisiana Electric Cooperative Association v. Louisiana Power and Light Company, La.App., 161 So.2d 413.
Plaintiff, in opposition to the intervention of South Louisiana Electric Cooperative Association, filed in this Court an exception of no cause and no right of action based largely on the propositions that the Intervenor had no interest in any of the lands involved, the defendants are individual land owners in Terrebonne Parish, and that no judgment of this Court would result in any pecuniary interest to the Intervenor. Plaintiff further set up in its exception that an Intervenor must have an interest in the matter in order to intervene and that the intervention comes too late because it was filed after the trial of the matter.
Pretermitting the first grounds of the exception to the intervention, which we believe are well founded, we are of the opinion that the intervention comes too late after trial and decision of the Lower Court and the appeal lodged in this Court. See LSA-C.C.P. Article 1033; Wenar v. Leon L. Schwartz, 120 La. 1, 44 So. 902; General Motors Acceptance Corporation v. Jordan, La.App., 65 So.2d 627; State ex rel. Temple v. Vernon Parish School Board, La.App., 178 So. 176, 180, 181.
On the question of jurisdiction, the Louisiana Public Service Commission, under *616 Article 6, Section 4, of the Constitution of 1921, LSA, is vested with the following powers:
"Section 4. The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads * * * electric light, heat and power * * * and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls or charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.
"The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission. The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution."
The Constitution does not grant the Commission jurisdiction to try expropriation suits. As these suits, between a utility company and individual landowners pertain to expropriation of a right of way, the question of necessity for taking servitude of these properties is vested in the Courts. See Kansas City S. & G. Ry. Co. v. Meyer, 166 La. 663, 117 So. 765 (1928); Calcasieu & S. Ry. Co. v. Bel, 224 La. 269, 69 So.2d 40 (1953); United Gas Pipe Line Co. v. Blanchard, 149 So.2d 615. (La.App. 1st Cir. 1963)
We are, therefore, of the opinion that the opposition to the intervention by way of exceptions is well founded, and the same should be dismissed.
This brings us to the merits of the case. Plaintiff corporation, organized under the laws of Florida, for the purpose of developing, generating, transmitting, distributing and selling electricity for use to the general public for a number of years operated a 138,000 volt (138 K.V.) transmission line extending generally east and west across Terrebonne Parish to the north of U.S. Highway 90 and Bayou Black. This line serves electricity to customers in Terrebonne Parish, including the REA and its various subordinate companies.
In 1961, plaintiff contacted Transcontinental Gas Pipe Line Corporation which was building a gas compressor station in the area involved in this litigation, and on January 26, 1962 secured a contract to supply electricity for the pipe line corporation plant.
Plaintiff also commenced negotiation with the Shell Oil Company to supply its electrical needs to its plant, a short distance west of the subject property, and on May 8, 1963 Shell Oil Company wrote a letter to plaintiff agreeing to purchase its electrial requirements from this plant. Service was commenced to Transcontinental Gas Pipe Line Corporation on June 23, 1962 by use of diesel generators. The generators are admittedly an uneconomical means of service, necessitated temporarily until plaintiff obtains the right of way to connect the Transco Plant with a substation site at the Shell Plant. Plaintiff planned to construct a transmission line southward from its existing 138 K.V. Line to the Shell Plant site, extending a 13.8 K.V. distribution line from the substation site of Shell eastward to Transco.
The Shell Plant was located on property acquired from Southdown, Incorporated, and plaintiff, having failed to secure the necessary right of way from Southdown, Incorporated, filed an expropriation suit against it. This suit was settled on *617 the basis of payment by plaintiff for the distribution right of way of $500.00 an acre.
In these five suits, plaintiff alleged the fair value of the servitude for the right of way was the price and sum of $375.00 per acre, which amount was offered to defendants, but refused. When the settlement with Southdown, Inc., was made on the basis of $500.00 per acre plaintiffs increased its offer to the defendants to the same amount. This offer was refused.
The defense on the question of necessity was predicated upon the fact that the REA had in existence in the area covered by these law suits, generally designated as Humphreys Area, a three phase 13.8 K.V. distribution line running adjacent to and parallel with Highway 90, but was serving no customers from that line except a single phase service to a Shell pump located south of the distribution plant.
The REA attempted to negotiate with the Transco and Shell Companies without success and on June 18, 1963 began converting its single phase line, running from Highway 90 to a point just south of the Transco Plant. This conversion began about 6 months after plaintiff had entered into a contract with Transco and only four days before service to Transco commenced. Defendants contend, with testimony furnished by employees of REA, that since REA had a 13.8 K.V. distribution line running adjacent in the vicinity of the Transco Plant, there was no necessity for the Power Company to extend its line and no necessity for these expropriations. Furthermore, defendants argue inasmuch as the REA had preempted this area, plaintiff was automatically excluded from servicing the public in this area.
The effect of this argument would be to create a monopoly in the electric industry through allocation of areas. The laws of Louisiana specifically preclude such exclusive franchises. See LSA-R.S. 33:4401; Richland Gas Company v. Hale, 169 La. 300, 125 So. 130.
Defendants rely largely on the case of United Gas Pipe Line v. Blanchard, 140 So.2d 615 (La.App.1st. Cir., 1963). The Judge of the Lower Court, in his written reasons, stated that he was aware of this case, had no quarrel with it, but was of the opinion that the Blanchard case does not decide the case at bar.
In the Blanchard case a gas pipe line company was attempting to expropriate a right of way to service a company area being served by another gas company. This Court affirmed the Lower Court's judgment, holding that no necessity had been shown for the attempted expropriations. There are several distinctions between the Blanchard case and the case at bar. In the Blanchard case the customers were already receiving service from the other company. In the instant case, a customer, Transco, was receiving service from plaintiff company: Shell had accepted service and plans were already in force to supply it, and, of course, plaintiff was supplying the REA electricity for service through its transmission line, although no one was being serviced in this area.
The Blanchard case is further distinguished for plaintiff therein claimed to have a contract for service, but no evidence was produced to prove it. In the Blanchard case, plaintiff alleged that the pipe line was to serve the general public, but no one from the general public was produced to testify they wanted the service. In this case evidence was produced to show the needs of this developing area, including serving points to the REA itself. Employees of REA testified admitting REA was planing to increase its facilities in this area. In the Blanchard case there was no evidence to indicate the area was being industrialized and the Company already serving the customers was shown to be very willing and able to continue that service. In the present case REA did express its willingness to serve the electrical needs from its existing facilities to this community, however, the evidence is not convincing that it had the necessary equipment *618 to do so. Without going into a detailed analysis of the various measures which the defendants' witnesses testified would allow them to service Transco and Shell, the Court is satisfied that it would be a very expensive proposition to do so. We, therefore, conclude that the Blanchard case does not decide the issues in the case at bar.
In the instant case, the evidence is convincing that the plaintiff was serving at least one customer with arrangement to service others, and its general purpose was to provide power to the entire surrounding area.
Relative to the question whether a utility company can expropriate property for the purpose of serving one customer with an additional intention of providing service to the entire community, we believe the case of Gulf States Utilities Co. v. Callahan, 65 So.2d 608 (La.App.1st Cir. 1953) determines this issue.
The question of the creation of a monopoly has been raised in defendants' briefs. The case of Claiborne Electric Cooperative, Inc. v. Louisiana Power and Light Company, 155 F.Supp. 644 (U.S.Dist. Court W.D. of Louisiana, 1957) is in point herein. In that case the Court held as to monopolies as follows:
"If the injunction plaintiff prays for should be granted, an unnecessary, unregulated monopoly for plaintiff would be created. This would require Customer to pay a higher rate for electricity than that which it enjoys under its present contract with defendant and, in fact, would enable plaintiff to charge Customer any rate it might arbitrarily fix, thereby placing customer's plant completely at plaintiff's mercy. Such a result should not be permitted by a Court of equity."
We are, therefore, of the opinion that the ruling of the Trial Court on the question of necessity is correct.
On the question of quantum, the Judge of the Lower Court awarded compensation on the basis of $500.00 per acre, which was the price of the settlement made by claimant with Southdown, Incorporated. The Trial Judge was of the opinion the property, the subject of these suits, should not be valued in excess of $500.00 per acre.
Defendants contend that the basis of the settlement should be $2500.00 per acre. Plaintiff's witnesses were Max J. Derbes and Gerald Viater. Both used practically the same comparables and as a result fixed a value of $200.00 an acre full value for the woodland property, and 50% of $700.00, or $375.00 for the cultivated high land. Their testimony is of little value since plaintiff had consented and offered the price and sum of $500.00 per acre to the defendants, based on the agreement and sale with Southdown, Incorporated.
The appellants contend that a sale made under expropriation is not test value and, as to Southdown, Inc., Louisiana Power and Light Company's purchase followed and resulted from an expropriation suit filed by plaintiff company against Southdown, Inc. See La. Highway Commission v. Ferguson, et al., La.App., 153 So. 342 (1934). See also State Through Department of Highways v. Gras, La.App., 131 So.2d 628, citing State Through Dept. of Highways v. Crockett, La.App., 131 So.2d 129 (1961). Both of plaintiff's appraisers ignored the sale of Earl Antill and wife to Transcontinental Gas Pipe Line (land used for Transco's Plant) in February, 1962 on the basis of $2500.00 per acre, claiming Transco was a captive purchaser.
Defendants offered as their expert witnesses Mr. Charles C. Chauvin and Mr. Hartwell Lewis, Sr. These two appraisers used substantially the same comparables, especially the sale from Williams Inc. to Shell Oil Company, dated September 26, 1962. This property was 40% woodland and the remaining portion cleared. The price of the tract was $2500.00 per acre. *619 This is the plant site of Shell Oil Company Refinery. Next, the sale from Southdown, Inc. to Shell Oil Company dated October 3, 1962. This property was 50% wooded area, and the price was $2500.00 per acre. This is the future site of the Shell Oil Refinery. Another comparable was Earl Antill to Transcontinental Gas Pipe Line Corporation, dated February 15, 1962. This property is the site of the vendee's gas compressor station. Another comparable was Southdown, Inc. to Shell Oil Company, dated October 20, 1962, which is a right of way deed for a pipe line right of way, and the price was $1887.83 per acre. There were several other comparables which run in value from $880.00 per acre up to $5000.00 per acre. We believe the comparables given by the defendants' witnesses more truly reflect the true value of the property.
This area over which this right of way is sought is just beginning to develop into an industrial area. The high land is used primarily for growing sugar cane, and the low land is timbered.
The two properties owned by the Charpentiers is a heavily wooded area and are adjoining. The Barrilleaux property, or Hunter tract, and the two Antill's property adjoin each other with a small tract of land situated between their properties and the Charpentiers' property. The land is pretty much the same character, with the cultivated portion on front and the wooded areas in the rear and is in the immediate vicinity of defendant's comparables. While there is some difference in the values placed on the wooded areas from that of the cultivated areas the land is all in close proximity to each other and because of the expected development of the same into an industrial area we do not feel that a distinction should be drawn. The land taken for the right of way is very small. The Nellie M. Charpentier tract being 0.042 acres, the Paul A. Charpentier tract being 0.135 acres, the Kenneth Barrilleaux tract being an undivided 1/42 interest in 0.4823 acres, the James S. Antill tract being 0.8524 acres, and the Earl Antill tract, 0.0093 acres. The evidence was that the servitude would be worth 50% of the fair value of the land taken.
We are, therefore, of the opinion that our learned brother below erred in fixing the value of the land taken on the basis of $500.00 per acre, and a correct value should be on the basis of $2500.00 per acre. On this basis the value of the servitude would be figured at 50% of $2500.00 or $1250.00 per acre.
For these reasons, it is ordered, adjudged and decreed that the intervention filed in this Court be dismissed at Intervener's costs; and that the judgment of the Lower Court in the instant case be amended to increase the award to $52.50. In all other respects the judgment of the Lower Court is affirmed.
Amended and affirmed.